## STATE v. WILLIAMS.

No. 2970.   Decided March 10, 1917.   (163 Pac. 1104.)

1. CRIMINAL LAW—REVIEW—DISCRETION OF COURT—CONTINUANCE. Granting a continuance in a criminal case is discretionary with the court, and its refusal to grant a continuance is not reversible error unless clearly prejudicial.   (Page 324.)

2. CRIMINAL LAW—CONTINUANCE—AFFIDAVIT—SUFFICIENCY. An affidavit for continuance of the trial of a criminal prosecution which stated in a general way that accused was unprepared to go to trial that he was impecunious and unable to pay witnesses for attendance upon trial and that one of his witnesses would be unable to attend trial by reason of physical infirmities, is not sufficient to justify the granting of a continuance. (Page 324.)

3. HOMICIDE—EVIDENCE—ASSAULT TO KILL—ACTS AND DECLARATIONS OF PERSONS ASSAULTED. In a prosecution for assault to murder, testimony as to what occurred and as to the condition and declarations of the person assaulted immediately after he was shot by defendant is admissible, especially where defendant did not deny firing the shots.   (Page 324.)

4. CRIMINAL LAW—APPEAL—PRESENTING QUESTIONS BELOW—EXCEPTIONS TO RULINGS. Accused cannot complain of the admission of evidence and of the court's failure to instruct the jury not to consider it where he did not take exceptions to the rulings of the court and to the instructions when given.   (Page 324.)

5. WITNESSES—CROSS-EXAMINATION OF ACCUSED—SCOPE—PREVIOUS CONDUCT OF ACCUSED. In a prosecution for assault with intent to murder an officer, where defendant claimed that he thought the officer was the husband of the woman in whose cabin he was at the time, and that the husband had come to kill the woman and defendant, as he had threatened to do, it was not error under Comp. Laws 1907, Section 5015, which provides that, if a defendant offers himself as a witness he may be cross-examined by the counsel for the state the same as any other witness to permit the prosecution to cross-examine defendant as to his previous relations with the woman to test his credibility, in the absence of any claim by the witness that the questions tended to degrade him.   (Page 325.)

6. WITNESSES—EXAMINATION—DISCRETION OF COURT—CROSS-EXAMINATION OF ACCUSED. It is within the sound discretion of the trial court to determine whether the cross-examination of ac-

cused, who had offered himself as a witness in his own behalf, was within the general rule as to cross-examination to test his credibility.[1]  (Page 325.)

7. HOMICIDE—JUSTIFICATION—UNLAWFUL ARREST.  Where officers who had reasonable grounds to believe that a felony was being committed in a cabin which they had been watching broke open the door in the night, as they were authorized to do by Comp. Laws 1907, Section 4637, to arrest defendant, defendant was not justified in attempting to kill one of the officers, even if the arrest was unlawful because they did not first demand admittance and explain their purpose, as required by Section 4645, where it was not apparently necessary to do so to save himself from death or great bodily harm, since the unlawful arrest was a mere trespass, and a trespass does not justify an attempt to kill, and therefore the court properly submitted to the jury the question of defendant's intent and purpose in firing the shots.[2]  (Page 328.)

Appeal from District Court, Sixth District; *Hon. J. H. Erickson,* Judge.

Al. Williams was convicted of assault with a deadly weapon with intent to do bodily harm, and he appeals.

AFFIRMED.

*Geo. T. Bean* for appellant.

*Dan B. Shields,* Atty. Gen., and *Jas. H. Wolfe,* and *O. C. Dalby,* Asst. Attys. Gen., for the State.

CORFMAN, J.

Al. Williams, the defendant and appellant here, was, on the 1st day of June, 1916, convicted in the district court of Sevier county of the crime of assault with a deadly weapon with intent to do bodily harm, under an information charging an assault with intent to commit murder.

Substantially the facts established at the trial are as follows:

The defendant, at about 11:30 o'clock on the night of April

---

[1]*People* v. *Hite,* 8 Utah 461, 33 Pac. 254; *People* v. *Larsen,* 10 Utah 143, 37 Pac. 258.

[2]*State* v. *Anselmo,* 46 Utah 137, 147 Pac. 1071.

27, 1916, was a visitor at a rented one-room house or cabin in Richfield, Utah, of a Mrs. Clara McCabe, the wife of one M. J. McCabe. The McCabes, until recently before the offense complained of against the defendant, Al. Williams, had been living together as husband and wife and residing at Marysvale, Utah. The defendant had also lived at Marysvale until a short time before the 27th day of April, 1916; and Mrs. McCabe and the defendant, Williams, had come to Richfield at about the same time, and both were comparative strangers at Richfield.

The McCabes, while living together as husband and wife at Marysvale, had domestic difficulties and had separated, the wife, Clara McCabe, coming to Richfield and taking up her abode there alone at this small house or cabin. The defendant, Williams, on coming to Richfield at about the same time as Mrs. McCabe, had engaged his services to a liveryman, one George Emett, whose home was but a short distance from the cabin rented and occupied by Mrs. McCabe. During the month of March previous to the act complained of against the defendant, Williams, the husband of Mrs. McCabe, had expressed to one Mrs. Munson an intention to kill both his wife, Clara McCabe, and the defendant, Williams, and this threat had been communicated by Mrs. Munson to the defendant, Williams, and Mrs. McCabe as well, a few days after the threat was made.

During the early evening of April 27, 1916, both the defendant, Williams, and Mrs. McCabe had been visiting at the home of the Emett family at Richfield, a short distance from the Mrs. McCabe cabin, and at about nine thirty o'clock of that evening the defendant, Williams, accompanied Mrs. McCabe from the Emett home to her cabin, entering and remaining there with her alone until midnight. Dan Borg, the city marshal of Richfield, having been apprised by citizens of the conduct of the defendant, Williams, and Mrs. McCabe, in company with his brother, Hans Borg, deputized to assist the marshal, proceeded at about nine thirty o'clock to the McCabe cabin to investigate. The city marshal and his brother, Hans Borg, remained outside the cabin from about nine thirty until about eleven thirty p. m. observing the conduct and listening

to conversation of the defendant and Mrs. McCabe, during which time the light in the cabin had been turned out; the marshal and Hans Borg at about eleven thirty left the cabin, crossed the street, had a consultation, and at about midnight returned to the cabin, then dark, and, finding the door of the cabin locked, proceeded, for the purpose of making an arrest of the defendant, to break open the locked door of the cabin for entrance, and on breaking open the door and throwing a flash light on the defendant and Mrs. McCabe, then in bed, the defendant immediately arose from the bed and fired two bullet shots from a thirty-eight caliber revolver at the marshal and his brother, both taking effect on the body of Hans Borg, one in the left forearm, the other penetrating the abdomen. The marshal and Hans Borg then withdrew from the door, and the door was then barricaded from the inside. The defendant and Mrs. McCabe remained in the cabin until about three o'clock the following morning, when the defendant Williams was placed under arrest by the sheriff of Sevier county.

At the time of the attempted arrest of the defendant Williams by the marshal and his brother, Hans Borg, no complaint had been filed charging either the defendant or Mrs. McCabe with crime, and no warrant issued for his arrest. The defendant, Williams, then had no acquaintance with the marshal or his brother, Hans Borg, as officers or otherwise, and both the defendant and Mrs. McCabe testified at the trial that they supposed the door of the cabin had been broken open by the husband of Mrs. McCabe for the purpose of killing them, and that the defendant had shot in self-defense.

Dan Borg, the city marshal, testified that after seeing and hearing what he and his brother, Hans Borg, did see and hear at the cabin, and before the door was forced open, they had become convinced that the defendant and Mrs. McCabe were then having illicit sexual relations.

As to the foregoing statement of facts there is but little, if any, controversy, disclosed by the record on appeal.

In prosecuting an appeal to this court, the defendant makes assignment of twelve errors. We will here discuss only such

as appear to be material and as are urged and apparently relied upon by the appellant for reversal.

1. First, it is contended that the trial court committed error in denying defendants motion for a continuance of the trial. The application was made to the court predicated on the affidavit of the defendant, stating in a general way that he was unprepared to go to trial; that he was impecunious and unable to pay witnesses for attendance upon trial; that one of his witnesses would be unable to attend trial by reason of the physical infirmities of the witness.

It has been so repeatedly held by this court that the granting of a continuance in a criminal case is a discretionary matter with the court, and will not be reversible error, unless the courts refusal to grant a continuance is clearly prejudicial, that we do not deem it worth while to discuss it here.

The defendant's affidavit does not in our opinion, appear to be of sufficient merit to have justified the court in granting the motion; besides, the record in no way discloses that the defendant was prejudiced by the court's refusal to grant a continuance, and the court's refusal was amply justified.

2. The second alleged error complained of by appellant was in the court permitting W. A. Cheal, a witness for the state, to testify as to what occurred, the condition of, and what was said and done by, Hans Borg immediately after his having been shot by defendant. To much of the testimony of this witness objected to, no exception was taken by appellant at the time nor after its introduction. The testimony relates to the effect of the shots and the nature of the wounds received by Hans Borg at the time of the shooting. It is not at all disputed by the defendant that the shots were fired by him; and we cannot conceive how this testimony could in any manner have been prejudicial to defendant even had it not been permissive, as in our opinion it was.

3. The third and fourth assignments of error relate to like testimony given by the states witness Anderson and the failure of the court to instruct the jury not to consider the evidence. Here again we are of the opinion the

court committed no error, and certainly appellant has no right to complain after failing as he did do, to take exceptions to the rulings and instructions of the court when given.

4. In his fifth assignment of error the appellant complains of the court in denying his application for an instruction to the jury to return a verdict in his favor of not guilty, at the conclusion of the state's case. Under the evidence then produced and submitted by the state the question as to whether the defendant was innocent or guilty, as charged in the information, or was guilty of any of the lesser crimes included thereunder, had become a question of fact to be passed upon by the jury under proper instructions, and was not a question of law to be determined by the court; and we are of the opinion that this motion of the defendant was at the time properly denied by the court.

5. Appellant for his sixth assignment of error complains of the court in overruling his objection taken to the question propounded by the state to him on cross-examination as follows:

"Well, now isn't it a fact Mr. Williams that there was some trouble at Marysvale in the latter part of the month of March when Mr. McCabe came to the residence of himself and Mrs. McCabe in Marysvale in the early morning when you and Mrs. McCabe were placed under arrest?"

This assignment of error, and also the assignments numbered 7, 8, and 8½, were inquiries relating to the conduct and associations of the defendant with Mrs. McCabe, and may be considered together.

It is well to bear in mind that the defendant had offered himself as a witness in his own behalf; that he had been testifying on his direct examination, not only as to his past life and conduct in a general way, but more especially concerning his conduct and associations with Mrs. McCabe at the time and preceding the alleged offense for which he was being tried.

Comp. Laws 1907, Section 5015, provides:

"If a defendant offers himself as a witness, he may be cross-examined by the counsel for the state the same as any other witness."

It is not contended by appellant that the questions complained of in any manner tended to degrade him, and had the witness done so he could have claimed his personal privilege, which he did not attempt to do either personally or by counsel. The state had a right to test the credibility of the defendant when he offered himself as a witness, and it was within the sound discretion of the trial court to determine whether the limits of his cross-examination was within the general rule and as has been repeatedly so held by this court. *People* v. *Hite,* 8 Utah, 461, 33 Pac. 254; *People* v. *Larsen,* 10 Utah, 143, 37 Pac. 258.

6. The remaining assignments of error mentioned by appellant—ninth, the refusal of the trial court to grant appellant's motion for a new trial, tenth, that the verdict is against the evidence and the evidence insufficient to sustain the verdict, and eleventh, that the jury wholly ignored the instructions of the court—we will discuss as a whole and in conclusion of our opinion as to whether the verdict of the jury and the judgment of the trial court should be sustained and affirmed, or set aside and reversed.

The appellant strenuously contends that he had committed no crime, and that the shooting of Hans Borg by him occurred while resisting an unlawful arrest, an invasion of his rights as a citizen, and that, under the law and the evidence produced at the trial, he was justified in doing all that he did do. With this contention of appellant we cannot agree. The arrest of the defendant was attempted in the nighttime, when he had seen fit to keep the company of a wife of another alone, and until the unseemly hour of midnight, with the room darkened, and, according to his own testimony, after having been threatened with death by the husband on account of real or fancied wrongs as they might be.

The city marshal of Richfield, assisted by his brother, Hans Borg, from early evening until midnight, when the arrest of the defendant was attempted by them, had been observing the conduct of the defendant and Mrs. McCabe behind her locked cabin door, when they, as officers of the law, had become convinced that the defendant was having illicit sexual intercourse with Mrs. McCabe, and that it was their duty as such

officers to forthwith apprehend and arrest the defendant. The conduct of the defendant and Mrs. McCabe, as testified to by the witness Marshall Dan Borg, certainly justified their conclusions, and the admitted facts, testified to by both the defendant and Mrs. McCabe as well, would move any officers mindful of their duty to seek to place the defendant under arrest at the time and place they attempted to do so.

Comp. Laws 1907, Section 4637, subd. 5, provides that an officer may arrest a person without warrant "at night, when there is reasonable cause to believe that he has committed a felony." As to whether the officers had reasonable cause to believe that the appellant here had committed and was then committing, a felony at the time and place the arrest was sought to be made, a casual review of the record, to our mind, would satisfy the most technical and exacting individual and disclose an abundance of testimony to be submitted to a jury to determine whether the officers had been justified in their conclusions.

We take it as admitted that an arrest for a felony may be made by day or by night, as provided by our statute (Section 4637, supra); that the person making the arrest need not inform the person sought to be arrested, when "engaged in the commission of or an attempt to commit an offense, or is pursued immediately after its commission, or after an escape." Comp. Laws 1907, Section 4642. Counsel contends, however, that before the officers had any right to break open the door of the McCabe cabin the officers should have first demanded admittance and explained their purpose, founding his contention on the provisions of Comp. Laws 1907, Section 4645, which provides:

"To make an arrest, a private person, if the offense is a felony, and in all cases a peace officer, may break open the door or window of the building in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

True, the officers Borg failed to strictly comply with this statute by not demanding admittance and explaining their purpose before breaking open the door of the McCabe cabin,

as the testimony shows; however, under the facts and circum-
stances as disclosed by the record in this case, it cannot be
very material whether or not the officers first demanded ad-
mittance and explained their purpose, for, according to the
testimony of both the defendant and Mrs. McCabe, for a con-
siderable length of time before the door was broken in they
were apprised of the presence of the officers on the outside of
the cabin. The revolver had been provided the defendant by
Mrs. McCabe in fear of and in anticipation that it was the
husband of Mrs. McCabe seeking to assail, and who, under
the law and under the circumstances, would have been justi-
fied in doing so. And while the defendant was thus in watch-
ful waiting for the husband, the officer Hans Borg opened
the screen door, tried the inner door, and, finding it locked,
the officer Dan Borg then, and before the breaking in of the
door, warned the defendant by saying, "This is the officers,
and we are coming in," then pushed upon the door with his
hands, and, failing to push it open, kicked it open with his
foot.

Under these circumstances, and before any entrance of the
officers, and while they were outside of the cabin at the open
doorway, without a word of command or warning whatsoever
to desist, the defendant arose from the bed occupied by him-
self and Mrs. McCabe and fired the two shots into the body
of the officer Hans Borg, for which he stands convicted.

The trial court in this case having expressly instructed the
jury that the attempted arrest of the defendant by the
officers was contrary to law, it was for the jury to de-
termine from the facts and circumstances whether the
defendant was to be found guilty or not guilty of the offense
of which he stands convicted by trial in the lower court.

This court, in the case of *State* v. *Anselmo*, 46 Utah, 137,
148 Pac. 1071, speaking through Mr. Justice Frick of the
rights of the citizen to resist unlawful arrest, in harmony
with an unbroken line of authorities, says:

"It certainly is not the law—and, we trust, never will be in this
jurisdiction—that a citizen may kill an officer with impunity merely
because such officer may make an attempt to arrest the citizen with-
out legal authority so to do. True, the right of the citizen to enjoy

Appeal from Sixth District.

liberty at all times is sacred, and may not be interfered with without legal right or authority by any one. Yet, upon the other hand, the citizen may not ruthlessly take the life of any one who may interfere or attempt to interfere with that liberty. Where an unlawful arrest is attempted by an officer or another, the person sought to be thus unlawfully arrested may, no doubt, resist such an arrest with all proper and reasonable means. He may, however, not kill the offending officer or person, unless it reasonably appears to such citizen that his life or limb is in danger. In other words, life may not be sacrificed in such cases, unless it is done pursuant to the 'right of self-defense, the same as in other cases of personal trespass.'"

The appellant here, immediately after the officers had broken open the door of the dwelling, not his dwelling, but the dwelling of a woman with whom his associations were such as had prompted her husband to make threats to kill him, without any inquiry or warning, and before the officers had any opportunity to enter or withdraw, or advise him of their purpose to arrest him, ruthlessly proceeded to fire the shots into the body of the officer and abide the attending results; and his intent and purposes in so doing, we think, should have been and were most properly submitted to the jury.

Under all the facts and circumstances of this case, as disclosed by the record on this appeal, we are of the opinion that no material error—prejudicial error—was committed in the trial and conviction of appellant. Therefore the judgment of the trial court is affirmed.

FRICK, C. J., concurs.

McCARTY, J. (concurring).

The grounds alleged upon which defendant mainly relies for a reversal of the judgment, as set forth in his assignment of errors and argued in his brief, may be summarized as follows: (1) That defendant, because of the threats alleged to have been made against his life by McCabe, had the right to presume, and to act upon the presumption, at the time the shooting occurred, that the party forcing his way into the cabin was McCabe, and that he came there to kill defendant and Mrs. McCabe; and (2) that the forcing of the cabin door

and the attempted arrest of defendant by Officer Borg was unlawful, and that defendant, under all the circumstances, had the legal right to resist arrest, and in doing so was justified in firing the shot that wounded the officer. I shall consider these propositions in the order in which I have stated them.

The evidence, without conflict, shows—in fact, defendant and Mrs. McCabe testified—that the threats referred to were communicated to them at Marysvale, Piute county, Utah, more than a month before the shooting in question occurred; that McCabe, soon after making the threats, left Marysvale, and that the last time they or either of them heard of him prior to the shooting he was in Salt Lake City, Utah. The defendant admitted on cross-examination that subsequent to the time it is claimed the threats referred to were made he was at the home of the McCabes at Marysvale in company with Mrs. McCabe, and while there Mr. McCabe came home bringing with him an officer, and had defendant arrested because of his relations with Mrs. McCabe. The character of the relations is not disclosed by the record. He also testified that after he was arrested at McCabe's home he saw McCabe several times at Marysvale, and that McCabe neither spoke to him nor made any attempt to molest him. He further testified that it had not been suggested to him before the shooting occurred that McCabe had ever been, or might then be, in Richfield; that while he was in the cabin on the night in question Mrs. McCabe stated to him several times that she heard sounds indicating to her the presence of some person in the immediate vicinity of the cabin; that on one of these occasions she declared that she saw "the sleeve" of a person resting on the window sill; that he did not hear anything himself except that on one occasion he heard a dog bark; that he attributed the apprehensive state of mind that Mrs. McCabe appeared to be in to her nervous condition and so informed her at the time. The evidence shows as stated, that on a previous occasion the defendant was at the McCabe home at Marysvale in company with Mrs. McCabe. Mr. McCabe instead of carrying out or attempting to carry out the threats attributed to him against the lives of these parties, appealed

to an officer and had the defendant arrested. The jury evidently believed, and they were justified in believing, that the claim made by defendant that he believed at the time he did the shooting it was McCabe who entered the cabin and that he was in danger of his life or of suffering great bodily injury at the hands of McCabe, was a mere subterfuge, and was not made in good faith.

Suppose, for illustration, that McCabe, instead of 'the officers, had gone to this cabin on the occasion in question, and he had seen and heard all that the officer testified that he saw and heard respecting the conduct of the defendant and Mrs. McCabe immediately before the shooting occurred, and had entered the cabin by forcing the door and then trained a flash light, as was done by the officer, on these parties, who admitted that they were on the bed together, and, according to the evidence of the officer, were disrobed and in the bed. The defendant under such circumstances, would not have had a legal right to shoot McCabe, or to otherwise do him bodily harm. The writer knows of no rule of law that justifies or excuses a man who is debauching another man's wife in her home in shooting down the husband of the woman whom he is defiling because the husband has the temerity to come upon the scene and object to the debasement of his wife, and thereby interrupts her defiler while engaged in his criminal sexual relations. We have a statute (Comp. Laws 1907, Section 4168) which provides, so far as material here, the homicide is justifiable ''when committed in a sudden heat of passion caused by the attempt of the deceased   *   *   *   to defile the wife   *   *   *   of the accused, or when the defilement has actually been committed.'' Therefore, if McCabe had gone at a late hour of night to the home of his wife, the cabin in question, and had there seen and heard all that the officer testified he saw and heard respecting the lewd and lascivious conduct of the defendant and Mrs. McCabe, who were on the bed together, and he had, in a sudden heat of passion, caused by the defilement there of his wife, taken the life of defendant, the killing would have been justifiable homicide.

I do not wish to be understood as holding that peace officers who have information which they believe to be authentic that

State v. Williams, 49 Utah 320.

some person charged with or suspected of having committed a felony is in a certain building may go there, force the door, and break in for the purpose of arresting such person without first "demanding admittance and explaining the purpose for which admittance is desired," as required by Comp. Laws 1907, Section 4645. To illustrate; Suppose McCabe, instead of defendant, had been in the cabin with Mrs. McCabe on the night in question, and the officers, believing it was defendant who was there alone with Mrs. McCabe, had forced the door and rushed into the house as they did do, and McCabe, under the excitement of the moment, and not knowing the purpose for which the officer entered, had fired the shots that wounded Hans Borg, it might be argued with considerable force that the assault on the officer was justified. But that is not this case.

The only conclusion deducible from the evidence, as I read the record, is that these parties on the night in question committed the crime of adultery, which, under the statute, is a felony. The evidence, considered in its entirety, is not only consistent with this theory, but is inconsistent with the theory of their innocence. On this point I do not think reasonable men, who are familiar with the facts and circumstances disclosed by this record, will differ. Furthermore, according to the evidence of the officer, the crime was committed in his hearing and partly in his presence. Therefore the claim made that the attempted arrest of defendant by the officers without a warrant was unlawful, and that defendant was justified in resisting arrest by shooting at and wounding one of them, is, I think, untenable. Under Comp. Laws 1907, sections 4638, 4641, a peace officer may, in the nighttime, and without warrant, arrest a person who is in the act of committing a felony in his presence.

Counsel for defendant, in support of the contention made that the attempted arrest of defendant by the officers was unlawful, and that defendant was, under the circumstances, justified in shooting at and wounding Hans Borg, cites and relies on the case of *State* v. *Anselmo*, recently decided by this court and reported in 46 Utah 137, 148 Pac. 1071. The record in that case showed that on June 23, 1913, at about

eight o'clock in the morning, Anselmo became involved in a saloon brawl or fight with one Massi. During the fight Anselmo cut Massi on the arm with a razor, inflicting a slight wound. Immediately after the fight terminated Massi wanted to use the telephone in the saloon to call a police officer, but was prevented from so doing by the bartender. A short time thereafter Anselmo "went up town," and in about one hour and a half returned with a loaded revolver concealed on his person, and went into a restaurant adjoining the saloon in which the trouble referred to occurred. He was in the restaurant about 15 minutes when Massi and a police of- ficer entered. The officer approached Anselmo and said, "What is the matter?" Anselmo replied, "There is no trouble." Massi then threw his coat back, exhibiting the wound referred to, and said, "This is the trouble." The officer thereupon arrested Anselmo, who, without objection, left the restaurant in custody of the officer. While on their way to police headquarters Anselmo broke away from the officer and tried to escape. The officer gave chase, overtook Anselmo, and was in the act of again taking him into cus- tody when Anselmo drew his revolver, turned on the officer, and shot him three times, killing him almost instantly. An- selmo escaped, but was again arrested, about ten or twelve hours after the homicide, on which occasion he again resisted arrest by trying to shoot the officers making the arrest, but was wounded by a shot fired by one of the officers.

The court in that case was divided. In the prevailing opinions which correctly reflect the evidence, it is said that Anselmo, within a period of about two hours immediately pre- ceding the time he was first arrested, "according to his state- ment, had taken six drinks of whisky, * * * and his sys- tem was not in a condition to resist the effects of the alcohol;" that he was a "weakling" and in a "half-drunken condition," and, as stated, he had concealed on his person a deadly weapon which he was carrying with the intention of using against a fellow man if certain contingencies should, in his opinion, arise. Moreover, his act in using a "deadly instrument or thing," a razor, on Massi, a short time before he was ar- rested, his shooting down the officer immediately after the

arrest, and his attempt to kill the officers who arrested him after the homicide is proof conclusive that he was a desperate, vicious, and dangerous man, and was, so long as he remained at large in his then condition, a menace to society.

As I have stated, the court in that case was divided. Each member disagreed with his associates respecting the application of the law of self-defense to the facts of the case. The then Chief Justice delivered an opinion which, reduced to the last analysis, holds that the killing of the officer by Anselmo was justifiable homicide. The writer of this opinion took the position that the act of the officer in making the arrest was legal, and, from any and every point of view, commendable; that he would have been derelict in his duty if he had failed to make the arrest; and that he neglected a duty he owed to himself, his family, and to the state by not having his gun in his hand instead of a police club, and shooting down Anselmo when he started to draw his revolver. The present Chief Justice, while holding that the officer exceeded his authority in taking Anselmo in custody and that the arrest was unlawful, neither justified nor excused the homicide. In fact, he pointed out very clearly that there was nothing in the case to show that:

Anselmo "had any reasonable cause to believe that the deceased in any way threatened his life or physical safety in making the arrest in the cafe."

And again he says:

"The case must therefore be treated as though the deceased had committed a technical trespass in attempting to arrest appellant [Anselmo]."

It will therefore be observed that all that was in fact settled in the Anselmo case on this point was that, while the arrest of the defendant in that case was unlawful, it amounted to nothing more than a mere technical trespass on the part of the officer making it.

Regarding the authority of the officers in the case at bar to enter the cabin in question without a warrant by forcing the door for the purpose of arresting the defendant and his

right to resist the attempted arrest, the court charged the jury:

"That the attempted arrest by the officer was contrary to law," and that, "when a person resists an attempt to arrest him made without legal authority, and the resistance is only proportionate to the assault and is provoked by it, if without malice, would be done in self-defense."

And again:

"Whether the defendant whose right to liberty and freedom from legal arrest was invaded, or whether he is guilty of the crime charged when he shot at said officers, or either of them, depends upon the circumstances of the case; he would have no right to kill or attempt to kill an officer who attempted to commit a trespass upon his person and nothing more; and the degree of force that he may use in resistance depends upon that used or attempted by the officers."

The jury evidently found, and there is abundant evidence to support the finding, that the circumstances under which the attempt to arrest the defendant was made did not justify or warrant a belief on his part that his life was menaced or that he was in danger of receiving great, or any, bodily injury, and that the shooting and wounding of the officer was unjustifiable and inexcusable. Therefore, regardless of whether the attempted arrest of the defendant was legal or unlawful, the assignment of error involving the question should be overruled.

I fully concur in the reasoning of and the conclusions reached in the case by my Associates.