## STATE v. FAIRCLOUGH.

No. 5510.   Decided May 2, 1935.   (44 P. [2d] 692.)

King, Jenson & King, of Salt Lake City, for appellant.

Joseph Chez, Atty. Gen., and Zelph S. Calder, Deputy Atty. Gen., for the State.

FOLLAND, Justice.

Defendant was convicted of mayhem alleged to have been committed August 28, 1932, by willfully and maliciously slitting the nose of Mrs. Harvel Maxwell. A motion for a new trial was made and overruled and the defendant sentenced to an indeterminate term in the State Prison. Numerous errors have been assigned on this appeal, but these may be grouped into four classes, as follows: First, the defendant was denied his constitutional right to a fair and impartial trial, in that he was denied the assistance of counsel; second, that the court failed in its instructions properly to present defendant's theory of the case with respect to self-defense; third, failure of the court to instruct the jury adequately on question of malice; and, fourth, alleged errors in the admission and rejection of evidence.

That Mrs. Maxwell's nose was slit and the end amputated is not disputed. The only disputed question was whether it was done by defendant and with unlawful intent. Mrs. Maxwell and Mrs. Fairclough, wife of the defendant, are sisters. The Faircloughs have been married several years and had children. Mrs. Maxwell for about six years prior to her marriage to Harvel Maxwell on August 16, 1932, had lived in the Fairclough home. The injury was inflicted on Mrs. Maxwell while she and her husband were at the Fairclough home between 7 and 8 o'clock on the evening of August 28th. Mrs. Fairclough was preparing to leave her husband and her home and return to her mother in Montana. Her reason for so doing, she said, was that her husband had been drinking heavily and that her sister, Mrs. Maxwell, had accused Fairclough of being the father of her unborn child. This accusation, which had been repeated to Fairclough by Mrs. Fairclough,

was the occasion for defendant's drunken spree. The only witnesses to the affair were the Maxwells and the Faircloughs. The Maxwells, husband and wife, told one story, and the Faircloughs different versions. Mr. and Mrs. Maxwell and Mrs. Fairclough were in the kitchen when the defendant came into the house about 7:30 in the evening. Mrs. Maxwell's narration of what then happened is that the defendant, after coming in and speaking to Maxwell,

"pointed to me, and he said: 'She is my wife.' And he said, 'Isn't that true?' I said, 'No.' And just then he took a leap over, and grabbed hold of my head and bit my nose off."

Mrs. Fairclough testified that the defendant said, addressing Maxwell,

" 'Harvel, there is something I want to ask you.' He said, 'My wife says that Mildred accuses me of being the father of the child she carries.' He said, 'Now, who the hell is the father? She was not your wife at that time.' Harvel said he did not care, and Mildred said it was a lie, and she jumped on him from his back, from behind, and they both fell to the floor. * * * My husband was on the bottom. * * * I just sat there, I was frightened. * * * He was down on the floor with my sister. * * * The first I saw was Mr. Maxwell, I saw he had a knife in his hand. * * * It was a long butcher knife that I had been cutting bread with previously. * * * After I saw Mr. Fairclough in front of Mr. Maxwell, and he had his hands up in the air, and he was saying, 'Go ahead.' He (Maxwell) just dropped that knife and he (Fairclough) said: 'You are a coward, go ahead and use it if you want to * * *.' Then Harvel dropped the knife and then Mr. Fairclough walked into the front room. I noticed my sister's nose was bleeding. She was over by the sink washing.''

The defendant's version was different from the other two. He testified he had been drinking for about five days and had drunk one and a half pints of moonshine liquor shortly before coming into the house. He said:

"I don't have a very good memory of it, but as near as I asked him —I wanted to ask him something, and told him that his wife had accused me of being the father of her child that she now carries. * * * He said he did not care about hearing anything about it. * * * I think I then called him. I think I said, 'You have been trying to

cause trouble for me for the past two years.' I don't know whether he said anything after that, or not. * * * I can remember calling him a dirty yellow son-of-a-bitch * * * and I think I hit him. * * *

"Q. Then what happened? A. I don't know. Everything went black till somebody hit me, and then I thought he hit me, but I don't know. * * * The next that I can remember I was in the car. I remember my wife telling me to drive slower. I was driving too fast."

Maxwell, in the main, corroborated his wife. He stated Fairclough had objected to his being a member of the National Guard, and then said:

" 'I got something to tell you.' I said I did not want to hear it. He said, 'Well, you are going to hear it.' I spoke to my wife and said: 'Let's us leave;' and he said, 'Mildred is my wife. * * * Isn't that true?' She said, 'No'; and he jumped clear across the room and grabbed her by the face, and then he said: 'That is my revenge.' As he did that I grabbed him by the arm and whirled him around. My wife jumped and ran, and he said: 'All right, now you can kill me.' "

Maxwell and his wife then left the home, entered a taxicab that had previously been called to take Mrs. Fairclough to the station, and went to the county general hospital where a plastic operation was performed on Mrs. Maxwell's nose by Dr. R. J. Alexander. The Faircloughs with two of their three children then left in Mrs. Maxwell's automobile. Mrs. Maxwell said her husband stated:

"Come on, Maud, if you still want to go home, I will take you."

Defendant drove the car all night. In the early morning he found himself outside of Burley, Idaho, where he was told by Mrs. Fairclough, according to her testimony, that Mrs. Maxwell's nose had been injured, whereupon the defendant decided to come back to Salt Lake and did so by driving to Wells, Nev., and thence to Salt Lake City. Dr. Alexander testified the nose appeared to have been amputated by teeth; that in his opinion the end had been bitten off.

The first group of assigned errors are directed towards the trial court's refusal to grant a postponement of the

case. This is said to have been a clear abuse of discretion on the part of the trial court, and to have deprived defendant of his constitutional and statutory rights to the assistance of counsel by depriving counsel, appointed by the court to try the case, an adequate opportunity to prepare for trial.

It is a general rule, and justice requires, that a person charged with crime should have a reasonable time to prepare his defense, otherwise a defendant's right to a fair and impartial trial might be nullified. 8 R. C. L. 67. To insure defendant the full enjoyment of his constitutional privilege, the time between the appointment of counsel by the court and the time of trial should be such as to afford a reasonable opportunity for preparation of the defense. 16 C. J. 823; 84 A. L. R. 545. The statute makes provision for the postponement of trial upon sufficient cause shown. R. S. Utah 1933, 105-30-1. Whether a postponement of the trial should or should not be granted on showing made is a matter within the discretion of the trial court and a denial of postponement will not be regarded as reversible error unless clearly prejudicial. *State* v. *Williams,* 49 Utah 320, 163 P. 1104; *State* v. *Cano,* 64 Utah 87, 228 P. 563. What is a reasonable time for preparation for trial depends on many things, such as whether the accused is confined in jail or is at liberty on bail, the nature and gravity of the charge, the complexity of the facts or circumstances involved in the crime, the number and availability of witnesses, the intricacy of any law points that may be involved. Such matters being within the discretion of the trial court, its decision is to be given great weight and ordinarily will not be disturbed except for manifest abuse of discretion or a showing of want of consideration of the rights of the accused. *Harris* v. *State,* 119 Ga. 114, 45 S. E. 973; 8 R. C. L. 68.

After a careful reading of the entire record, we are satisfied the defendant was not denied any of his constitutional

or statutory rights as to counsel or that he was deprived of a fair and impartial trial. The complaint was filed September 1, 1932. Defendant was bound over to the district court November 28, 1932, after a preliminary hearing. He was arraigned on information filed in the district court December 5, 1932. A trial was had in the district court in January of 1933. At each of these appearances defendant was represented by counsel employed by himself. The first trial resulted in a disagreement of the jury so the case had to be retried. The district attorney stated he had delayed putting the case on the trial calendar from time to time at the request of defendant's attorney, but finally set it for May 15, 1933, with some other cases, each of which would be tried in turn as it was reached. This is the ordinary and well-known method of setting criminal cases in vogue in the district court of Salt Lake county. Defendant and his counsel were informed of this setting. On the afternoon of May 23d the district attorney notified the office of defendant's counsel that the case would be reached and called for trial at 10 o'clock a. m., May 24th. On the morning of May 24th neither the defendant nor his counsel appeared, but Mr. Karl V. King, a son and partner of defendant's counsel, appeared and filed an affidavit in support of a motion for continuance on the ground that defendant's counsel was engaged in the federal court at Ogden and that the defendant "objects to going to trial without the presence of said Samuel A. King to defend him." The court indicated that a few days' continuance might be allowed, but upon it being made to appear that such a continuance was not desired, but rather an indefinite postponement or continuance for the term, the court stated:

"I would be glad to accommodate you if I could, for a reasonable time, but we can't just say we will try these cases when the attorneys haven't anything else to do. I don't know that there is anything to do other than to proceed with the trial if a convenience for a few days would not accommodate you."

The matter was then continued until 2 o'clock, at which time the defendant was present. It was again made apparent that what defendant wanted was that he should be defended by Mr. Samuel A. King and that the case should be continued without date so that this might be done. Mr. Karl V. King stated the employment was of Mr. Samuel A. King personally and not the partners. The court appointed Mr. Karl V. King to represent the defendant and continued the case until 2:30 to afford the defendant an opportunity to employ other counsel if he chose. At 2:30 no other counsel having been employed, the court appointed three additional members of the bar, including another partner of Mr. Samuel A. King, to proceed with the defense. A jury was impaneled and recess taken until 10 o'clock the next morning. When court convened at 10 o'clock a. m., March 25th, affidavits of the defendant, his employed counsel, and each of the appointed counsel, were presented to the court stating reasons why, in their opinion, the case should be postponed. After consuming considerable time in discussing the matter, the court denied the motion and proceeded with the trial of the case. Two of the appointed counsel were excused, and the trial was then conducted with Mr. Karl V. King and Mr. Carlos J. Badger representing the defendant under the court's appointment. The case was not finished on the afternoon of the 25th and was continued over until the 29th.

It is apparent from a reading of the affidavits and arguments and motions that no willing effort was made by defendant or counsel to accommodate themselves to the court's time for hearing the case, but that what was desired was a postponement for the term or until such time as defendant's employed counsel could conveniently participate in the trial. The case was free from anything like intricacy as to the facts or the law applicable thereto. Counsel who tried the case were young but experienced men. The record discloses the case was well tried. It does not indicate that defendant was prejudiced by lack of skill,

want of information, or lack of preparation on the part of counsel. While the time allowed appointed counsel was short, yet after it was evident that the court would not continue the case indefinitely but would require that it be tried, no effort was made on the part of the defendant or his appointed counsel to accept the offer held out by the court of continuance for a few days. In the affidavits filed on the morning of the 25th and in their brief in this case, it is said in effect that the court required the trial to proceed without the defendant ever having conferred with appointed counsel and that such counsel were entirely ignorant of the facts in the case. It is apparent there was ample opportunity between the adjournment of court on the 24th and the morning of the 25th within which counsel and the defendant might have conferred on matters of defense had they so desired. Much of that time was taken up in preparing the affidavits for continuance, and these affidavits show defendant and counsel were in conference.

Counsel for defendant strongly rely on the case of *Powell* v. *Alabama,* 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527; *Fuson* v. *Commonwealth,* 199 Ky. 804, 251 S. W. 995; *Sheppard* v. *State,* 165 Ga. 460, 141 S. E. 196; *Reliford* v. *State,* 140 Ga. 777, 79 S. E. 1128; *Harris* v. *State,* 119 Ga. 114, 45 S. E. 973; *Shaffer* v. *Territory,* 14 Ariz. 329, 127 P. 746; *State* v. *Davis,* 9 Okl. Cr. 94, 130 P. 962, 44 L. R. A. (N. S.) 1083; *Commonwealth* v. *O'Keefe,* 298 Pa. 169, 148 A. 73; *McArver* v. *State,* 114 Ga. 514, 40 S. E. 779. Many of these cases involve a charge of murder or rape where the penalty is death or life imprisonment and where the defendants were incarcerated and brought to trial for the first time without any adequate opportunity by appointed counsel for preparation, thereby amounting to "a denial of effective and substantial aid" to the defendant. In one of the cases no opportunity to subpoena witnesses was afforded. In one case the defendant was tried and convicted within five hours after his arrest on the same day. A comparison of

the facts and circumstances disclosed in the case of *Powell* v. *Alabama,* supra, and the other cases cited, shows that the cases are clearly distinguishable on the facts from the one before us. The charge here is a serious felony, but defendant had employed his own counsel and had adequate time for preparation before the first trial. Both he and his attorney had knowledge of the setting of the case for May 15th, or as soon thereafter as the matter would be reached. Notice was given defendant's counsel that the case would be called for the 24th. Upon it being made to appear that defendant's counsel was engaged in another court the trial court offered a few days' accommodation to counsel. When he learned that the trial had already been delayed at the request of defendant's counsel and that what was now wanted was in effect a vacation of the setting and a postponement for the term, he then insisted upon a trial without undue relay. We believe that under all the circumstances there was no abuse of discretion. The court was present with jurors in attendance ready to try the case. The responsibility was on the trial court to regulate its calendar and conduct the trial of cases thereon in the interest of public justice. The entire machinery of justice would be clogged if the court's calendar had to be made up merely to suit the convenience of counsel, or the court try cases only when the defendants or their counsel were ready for trial. In *People* v. *Warren,* 130 Cal. 678, 63 P. 87, 88, the court appointed counsel to take the place of other counsel in the course of trial. A motion for continuance was denied. The court on appeal said with reference to the motion for continuance:

"Motions of this kind rest much in the discretion of the court below, and it is only in cases of arbitrary action or abuse of discretion that we would be justified in interfering with the order of the court. * * * All the defendant could require, as a matter of right, would be a reasonable time to have other counsel become familar with the facts of the case. This time was granted by the court, and, under the circumstances, appears to have been amply sufficient. The court

must have discretion in such cases. *People* v. *Goldenson*, 76 Cal. [328], 341, 19 P. 161."

It is next contended that the court failed by its instructions to properly present defendant's theory of the case. What his theory was is not clearly defined. It would seem that it was either that the act was committed in self-defense, or that it was done while defendant was in such a drunken condition that he was incapable of forming an intention to commit the act, or that it was done by some one other than defendant in the scuffle between defendant and Mr. and Mrs. Maxwell, or one of them, wherein Maxwell held a knife. Defendant complains that the court should have given his requested instructions Nos. 1, 2, 3, 4, 5, 6, and 7 in order to properly and adequately cover the defense of self-defense. The court, however, gave a comprehensive and correctly worded instruction on the subject of self-defense. While an exception was taken to this instruction, it is not now claimed that it is erroneous, but merely that it did not sufficiently show defendant's theory of the case. In the absence of a proper request for instruction on the same subject, this certainly was sufficient. No one of the seven requested instructions is entirely free from objection. Statements of fact are made not supported by any evidence, and in no one or all of them is the law of self-defense adequately and fully presented. In several of these requests the instruction of law is based on an assumed assault on the defendant by Mrs. Maxwell and her husband, while the evidence fails to show any assault by Mr. Maxwell; that Maxwell and wife came to the defendant's home for the purpose of inducing defendant's wife to leave him, when there is no evidence of any such purpose. Such propositions of law as are correctly stated in the requests are adequately covered by the court's instructions.

Defendant's request No. 18 defined the word "maliciously" and contained an instruction respecting intoxication as an excuse for crime. With the exception of one

element the request was in proper form and could well have been given with slight amendment. It, however, nowhere referred to or covered the contingency of the defendant becoming intoxicated for the purpose of doing the act charged while intoxicated. This element is correctly stated in the court's instruction to the jury on the subject of intoxication. That such a proposition was pertinent under the facts of the case is evident from the testimony of Mrs. Maxwell that the defendant had threatened to disfigure her if she ever left his home, the testimony of defendant that he had, after the Maxwells arrived at his house, consumed one and a half pints of moonshine whisky, and the testimony of Mr. Maxwell that after the act was committed the defendant said, "This is my revenge." Refusal to give request No. 18 was not error.

Request No. 19 defined "maliciously" and charged that before the defendant could be found guilty the jury must find beyond all reasonable doubt that at the time of the injury, if inflicted by defendant, he had a deliberate intent to slit her nose. The subject-matter of this request for instruction was adequately presented by an instruction given by the court, with the exception that the court failed in that instruction to tell the jury that if they entertained a reasonable doubt as to whether defendant was in such an intoxicated condition that he was unable to form a specific intent to do the act, he was entitled to the benefit of such reasonable doubt. The instruction should have included this element. No exception, however, was taken either to the whole or to any particular part of the instruction, nor was the defect pointed out to the court or exception taken to the failure to have such element included. The defect, however, is not fatal because the court in its instructions very fully instructed on the question of reasonable doubt, and further told the jury that while the instructions were numbered separately they nevertheless were to be considered as a whole.

Exception was taken to an instruction on the subject of flight of a person immediately after the commission of a crime. The objection is not that the instruction contained an erroneous statement of law but that it was error to instruct at all on that subject as there was "not any element of flight in this case." The exception is not well taken. There is evidence of the defendant leaving the scene of the crime and the state, under circumstances which the jury might find constituted flight. Immediately after the injury to Mrs. Maxwell the defendant volunteered to take his wife to her mother's home in Montana. She had previously arranged to go by train. Within five or ten minutes after the altercation, defendant drove away in Mrs. Maxwell's car with his wife, two of their minor children, and luggage. The electric lights in the home were left burning. Instead of driving to Montana, he went to Burley, Idaho, thence to Wells, Nev., and thence back to Salt Lake City. While at Wells he scratched Mrs. Maxwell's initials off the car. This conduct was attempted to be explained, but clearly the explanation was for the jury under the instruction given.

Many exceptions were taken to rulings of the court on the admission and rejection of evidence. We have considered all of them, but only two are of sufficient importance to notice in this opinion. Mr. Maxwell had testified on direct and cross-examination that he had not seen the defendant on the evening of the trouble prior to the time defendant entered the home. On cross-examination he was asked:

"Q. Didn't you testify at a previous hearing of this case that you saw him about six o'clock, that he was in Maxwell's wife's car, or in your wife's car, in the seat, lying down, apparently asleep, didn't you so testify? A. No sir."

Counsel interposed an objection to the question that it was immaterial and the court sustained the objection. The question was answered but the answer was not stricken.

No effort was made to follow up by the offer of impeaching evidence in contradiction to the answer given by the witness. While the objection should not have been sustained, because it was proper cross-examination, it would seem the defendant could not have been prejudiced by the ruling.

Mrs. Fairclough, on cross-examination, was questioned for the purpose of laying a foundation for impeachment respecting conversations had with Dr. Alexander after she returned to Salt Lake City. Over objection the court permitted an answer. She was asked, after fixing the time and place, if she had a conversation or conversations with Dr. Alexander in substance and effect that she was much chagrined and humiliated by the fact her husband was so brutal as to attack her sister and bite off the end of her nose, to which she answered, "No sir." Dr. Alexander was called in rebuttal and over objection testified to conversations had at the times and places indicated of substantially the same matters outlined in the question put to Mrs. Fairclough. It is contended by appellant that this was impeachment on a collateral issue. Mrs. Fairclough was a defense witness. She was present during the entire time of the altercation and was the only person who testified to seeing a knife in the hand of Mr. Maxwell, from which it might be inferred that the slitting of the nose was done with a knife. What she had told another of the nature and cause of the injury to her sister was certainly not a statement of a collateral matter. It is also objected that the conversations were hearsay and hence inadmissible. This undoubtedly was hearsay but was admissible for purpose of impeachment, and for that purpose only. The assignment is without merit.

Finding no reversible error in the record, the judgment of conviction is affirmed.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.