PATRICK SULLIVAN, Administrator of Estate of
   James Joseph Sullivan, v. ANNA L. A. CHAUVEN-
   NET, Appellant.

Division One, June 2, 1920.

1. **EXCESSIVE SPEED: Automobile: Question for Jury.** Where the
   speed allowed by ordinance was ten miles an hour and there was
   positive testimony, corroborated by relative facts, that the auto-
   mobile was running from fifteen to twenty miles an hour at the
   time it struck the little boy, there is solid ground for submitting
   to the jury the issue of unlawful and dangerous speed.

2. ———: ———: **Slowing Down: Intersecting Street.** Where two
   separate roadways run along a street and a cross-street debouches
   into the roadway an automobile is not running on; neither the
   statute nor the ordinance requiring an automobile "upon ap-
   proaching an intersecting highway" to slow down, applies; they
   only apply where one street opens into another and vehicles us-
   ually run past the month of an intersecting street; where the
   east-and-west street bears northward from the east side of the
   north-and-south street forty feet to the west side, the two streets
   are not intersecting streets within the meaning of either the
   statute or ordinance, and an automobile coming north on the east
   side of the north-and-south street is not required by either to
   slow down on the sole ground that they are intersecting streets;
   and an instruction which directs a verdict for plaintiff if the
   "automobile approached the intersection of said streets without
   slowing down," is error.

3. ———: ———: ———: ———: **Verdict on Other Ground.** If the
   instruction directed a verdict for plaintiff on the ground that
   the automobile approached an intersecting street without slow-
   ing down, which was erroneous because within the meaning of
   the statute the cross-street was not an intersecting street, a ver-
   dict for plaintiff cannot be permitted to stand, although the evi-
   dence clearly establishes another act of alleged negligence, name-
   ly, failure to signal; for in such case, it cannot be known which
   negligent act was found by the jury to be the proximate cause
   of plaintiff's injury.

4. **CONTRIBUTORY NEGLIGENCE: Failure to Look: Question for
   Jury.** The thirteen-year-old boy, at seven-thirty in the evening
   of October 2nd, left the east side of the street and started to run

diagonally to the southwest corner of the two crossing streets. Defendant's automobile was driving north with five brilliant headlights. According to the driver's testimony the boy was only one foot from the east curb when he was struck and the automobile was only three feet from him when he left the curb; according to the boy's testimony, and other evidence, he was seventeen feet from the curb and only three feet from the east streetcar rail when he was struck. *Held*, that the conclusion of contributory negligence on the part of the boy in not looking for the automobile before leaving the sidewalk, is not compelled, but is an issue for the jury.

Appeal from St. Louis City Circuit Court.—*Hon. Karl Kimmel*, Judge.

Reversed and remanded.

*H. W. Allen* and *Blodgett & Rector* for appellant.

(1) The demurrer to the evidence should have been sustained. Pannell v. Allen, 160 Mo. App. 721; Winter v. Van Blarcom, 258 Mo. 418; Hyde v. Hubinger, 87 Conn. 704; Stahl v. Sollinberger, 246 Pa. 525; Curley v. Baldwin, 90 Atl. 1; Sullivan v. Smith, 91 Atl. 456; Battles v. United Rys. Co., 178 Mo. App. 596; Gray v. Wabash, 179 Mo. App. 541; Hight v. American Bakery Company, 168 Mo. App. 431. (2) Plaintiff was guilty of contributory negligence as a matter of law. Winter v. Van Blarcom, 258 Mo. 418; Sullivan v. Chauvenet, 186 S. W. 1090 (l. c. 1093, Separate Opinion of Allen, J.); Curley v. Baldwin, 90 Atl. 1; Sullivan v. Smith, 91 Atl. 456. (3) The instruction given on behalf of plaintiff as modified by the court covering the case, is erroneous in allowing the jury to find that plaintiff's injury was caused by defendant's negligence in running said automobile at a high and dangerous rate of speed, or without sounding any warning or giving any signal of its approach, or without slowing down as said automobile approached the said intersection of said streets. Pannell v. Allen, 16^ Mo. App. 721; Winter v. Van Blarcom, 258 Mo. 418; Laws 1911, chap. 83, sec. 2. (4) The instruction given

on behalf of plaintiff covering the case, is erroneous in that it allows the jury to find that plaintiff's injury was caused by defendant's negligence in approaching the intersection of said street without sounding any warning or giving any signal of its approach or without slowing down, inasmuch as there was no evidence showing or tending to show that the defendant did not slow up in approaching the place of the accident.   Flannigan v. Nash, 190 Mo. App. 578; Dedo v. White, 50 Mo. 241; Schumacher v. Brewers Co., 247 Mo. 141; Black v. Ry. Co., 217 Mo. 685.

*Walter B. Douglas* and *Roebke & Clay* for respondent.

(1) Whether or not the plaintiff was guilty of contributory negligence was a question of fact and was properly submitted to the jury.   Frankel v. Hudson, 271 Mo. 495; Hodges v. Chambers, 171 Mo. App. 563; Bongener v. Ziegenheim, 105 Mo. App. 328; Ginter v. O'Donoghue, 179 S. W. 732; Sullivan v. Chauvenet, 186 S. W. 1090; Schmidt v. Railroad, 169 Mo. 285; Vaughan v. Scade, 30 Mo. 600; Rowe v. Hammond, 172 Mo. App. 213; Campbell v. St. L. Sub. Ry. Co., 175 Mo. 175; Mullin v. Transit Co., 196 Mo. 579; Deschner v. St. L. & M. Ry., 200 Mo. 237; Burgis v. Railroad, 112 Mo. 238; Jackson v. Butler, 249 Mo. 342.   No demurrer to the evidence having been offered by defendant at the end of the whole case, this question is not now open.   (2) There was abundant evidence to support the jury's finding. That the machine was run at a high and dangerous rate of speed is shown by Daly's testimony that it was running between fifteen and twenty miles an hour; by Dr. Dean's testimony that the boy's kidney was cut in two, and that to cut the kidney would take a very severe blow; by the fact that the heavy steel fender or mud guard of the car, which was the part that struck the boy, was bent upward, and by the fact that the car ran from twenty-five to forty feet after striking the boy.   That no warning was sounded or signal

given on approaching Cote Brilliante Avenue on the west is testified to by defendant's witness, the chauffeur, Flynn. The same witness testified that he did not slow down; that he could slow down enough to get his car in control by changing the speed, but that he did not change the speed. As to the physical facts showing speed, see Haake v. Davis, 166 Mo. App. 254; Aronson v. Ricker, 185 Mo. App. 534. Generally, see Laws 1911, pp. 326, 330; Ordinance of St. Louis, secs. 13, 1551; Mitchell v. Brown, 190 S. W. 354. (3) Defendant contends that the first instruction given was erroneous "inasmuch as there was no evidence tending to show that the defendant did not slow up in approaching the place of the accident." The defendant cites decisions. We ask the court's attention to the evidence.

GOODE, J.—Between seven-thirty and eight o-clock in the evening of October 2, 1912, James J. Sullivan, then a boy thirteen years old, was collided with and seriously hurt by an automobile owned by defendant and driven by a chauffeur employed by her. The injured boy began this action, but as he has died since it was tried. Patrick Sullivan, the administrator of his estate, has been substituted as the plaintiff. For convenience we will speak of the boy as still the plaintiff.

As related by the boy and corroborated in important particulars by other testimony, the facts are these: The plaintiff had been playing a game with some boys at Garfield and Union Avenues, two intersecting streets in St. Louis, the former running east and west and the latter north and south. Boys of another group were teasing the proprietor of a hardware store nearby and finally the proprietor chased them. Plaintiff was afraid he might be caught and charged with the mischievous acts done in front of the hardware store, though he said he had nothing to do with them; so he ran, too, and southwardly along the east side of Union Avenue toward another east-and-west street which intersected it; that is, Cote Brilliante Avenue. Cote Brilliante does not run across

Union in a straight course, but has a jog in it at Union, which it enters at the east side about forty feet south of where it enters at the west. Plaintiff ran along the east sidewalk of Union Avenue until he reached a point opposite the mouth of Cote Brilliante on the west side of Union, which was a common crossing place, and there he started across Union, still running to join a boy friend on the southwest corner of Union and Cote Brilliante. He was looking south, but saw no automobile coming. Double street car tracks run along the center of Union Avenue, with roadways on either side, and when plaintiff was within three feet of the east street-car track and seventeen feet from the east curb of Union, he was run into by defendant's automobile, knocked down, got up, walked to the sidewalk, fell there, was taken up, and conveyed in the automobile that hurt him to a hospital. The machine was stopped about thirty-five feet north of the point where it knocked plaintiff down. No warning of its approach had been given by horn or other noise, and he had not observed it, but its headlights were burning and he could see several blocks to the southward. The chauffeur went to the plaintiff while plaintiff was lying on the ground, and was asked why he didn't sound a horn, and the chauffeur replied he didn.'t have time. The automobile was a heavy one and the fenders on it were heavy. The left front fender was the part that struck plaintiff and it was bent slightly by the blow. A witness testified he noticed the automobile just before it hit the boy; that it was running "at full speed"—fifteen or twenty miles an hour. An expert said it could have been stopped, considering the condition of the street and the speed, in fifteen or twenty feet. Traffic ordinances of the City of St. Louis regulating the driving of automobiles are in proof.

The driver of the automobile testified as follows: He had stopped just south of East Cote Brilliante Avenue to adjust his rear light, and after starting again was running about six miles an hour; plaintiff ran into the automobile, having started southwest across the drive-

way of Union Avenue, when the automobile was within three feet of him; he was looking back in the direction of the proprietor of the hardware store who was chasing some boys; when he saw plaintiff the clutch was thrown out and the brake applied, which were the acts to do to stop the car; also the car was turned toward the east curb of Union Avenue and hit plaintiff only a foot from the curb; ran three feet after the collision; didn't blow his horn because he hadn't time to do so after he saw plaintiff.

The injured boy was given attention by a physician at the hospital, where he complained of pain in the region of his left kidney; showed no bruise or swelling, but was pale and weak; was taken home that evening; suffered much through the night, and the next day, or the day after, commenced to bleed from the left kidney, and the hemorrhage continued until he came near dying; was taken again to the hospital and an operation performed. The left kidney had been torn in two—the upper third was torn off. The kidney was removed and after several weeks the plaintiff was able to leave the hospital, and in two months he returned to school, but remained weak for a long time.

The specifications of negligence counted on in the petition are these: first, that by the exercise of ordinary care, the driver could have seen plaintiff crossing the street in time to avoid injuring him; second, in violation of the duty imposed by law and ordinance on persons operating automobiles on a public street, the driver of the car ran it at a high and dangerous speed and in excess of ten miles an hour; third, the driver sounded no warning; fourth, did not reduce speed as he approached the intersection of Cote Brilliante and Union Avenues.

The answer was a general denial and an averment that plaintiff caused or contributed to his injury by running backward into the street from the curb on Union Avenue at a point not customarily used by pedestrians as a crossing, without looking to see whether a vehicle was

approaching, and in so doing ran into and collided with the automobile, when, by using reasonable care to look for approaching vehicles, he could have avoided the collision.

The jury returned a verdict against defendant for $12,500, and judgment having been entered on the verdict, the defendant appealed.

The court instructed for a verdict for the plaintiff James Joseph Sullivan, if the jury found defendant's chauffeur negligently ran the automobile against plaintiff at a high and dangerous speed, or without sounding a warning or giving any signal of its approach, or without slowing down as the automobile approached the intersection of Cote Brilliante and Union Avenues, provided the plaintiff was found to have been exercising ordinary care for his own safety. The instruction omitted to submit the question of whether the driver of the car could have seen the boy, had ordinary care been used, in time to avoid running against him, though an allegation to that effect was made in the petition. The defendant asked a separate instruction concerning each of the three acts of negligence submitted to the jury, and charging that plaintiff was not entitled to a verdict for the particular act of negligence mentioned in the instruction; the total effect of these three instructions being that the plaintiff was not entitled to a verdict at all. We learn from the opinion of the St. Louis Court of Appeals that at the first trial the only issue of negligence left to the jury related to the omission of the chauffeur to sound a warning. We presume additional evidence was introduced at the second trial, as a different view of the case was taken by the court in instructing the jury, and rightly.

The limit of speed allowed by municipal ordinance in the district of St. Louis where the accident occurred, was ten miles an hour. There was testimony that the speed defendant's automobile was under when it hit

the boy was from fifteen to twenty miles an hour. This

**Excessive Speed.**

evidence, if believed, inclines to prove the speed was not only excessive, but dangerous. The car ran thirty-five or forty feet past the boy after colliding with him; the fender that struck him, a heavy one, was bent upward by the blow; he was knocked three feet away; his kidney was torn in two. We rule there was substantial evidence that the car was running at an unlawful and dangerous speed.

An ordinance of the city required drivers of motor vehicles to sound their horns so as to warn pedestrians when they approached the crossing of a public street. The plaintiff was struck at a point on Union Avenue

**Warning.**

which was commonly used as a crossing, according to the testimony, and no signal was given as defendant's car drew near that crossing. The chauffeur acknowledged he did not blow his horn when he started again after having stopped on the south side of the intersection of East Cote Brilliante Avenue with Union, a point some seventy feet south of the place where the boy was struck. He said, too, he did not signal at any time after resuming his journey and before the boy was hit; in fact, did not remember blowing the horn after he passed Delmar Avenue, an intersecting street many blocks south of Cote Brilliante. Possibly the fact that West Cote Brilliante opened into the west side of Union, was the cause of his omitting to signal as he approached the crossing; but as a commonly used crossing was there, the evidence tends to support a finding that it was an omission to comply with the ordinance, and cause for a finding that the chauffeur was negligent.

The court instructed it was ground for a verdict for plaintiff if the automobile approached the intersection of the streets without slowing down. For conveni-

**Intersecting Street.**

ence in considering the propriety of that direction, we transcribe the instruction wherein it was given:

"The court instructs you that if you find and believe from the evidence that on or about the second day of October, 1912, the defendant or her agent and servant was operating an automobile on Union Avenue at the intersection of said avenue with Cote Brilliante Avenue, and that both of said avenues are public streets of the City of St. Louis, and that the defendant or her agent and servant negligently ran said automobile at a high and dangerous rate of speed, or without sounding any warning or giving any signal of its approach, or without slowing down as said automobile approached the intersection of said streets, upon and against plaintiff, striking and injuring him, and if you find and believe from the evidence that plaintiff's injury was proximately caused by defendant's negligence in one or more of said particulars above mentioned, and that the plaintiff at the time was exercising ordinary care for his own safety, then your verdict should be for the plaintiff."

We remark that the three careless acts, either of which, if proved to have happened would warrant, according to the instructions, a verdict for plaintiff, are stated separately and divided by the word "or." We remark, too, that the right of recovery, if the car approached the intersection of the streets without slowing down, is not based on neglect to slow down upon the driver's apprehending or having reason to apprehend, the plaintiff was in danger of being run against, if the speed was not lowered; but on the bare fact that the speed was not lowered as the intersection was approached. Omitting to reduce speed was not, in itself (and independently of reason to anticipate striking some person if the rate of speed was kept up), negligent conduct unless the law of the State or a municipal ordinance required a reduction when approaching the place of the accident.

This is the statute that bears on the question: "Upon approaching a pedestrian who is upon the traveled part of any highway and not upon a sidewalk, and

282 Mo.—42

upon approaching an intersecting highway or a curve or a corner in a highway, where the operator's view is obstructed, every person operating a motor vehicle shall slow down and give a timely signal with his bell, horn or other device for signaling." [Laws 1911, p. 327, sec. 8, par. 2.]

The question submitted was not whether the driver of the automobile neglected to · slow down upon approaching the plaintiff when the plaintiff was a pedestrian in the highway, but when the car approached an intersecting highway. Can it be said the statute required the driver to slow down because he, while driving in the east driveway of Union, was drawing near to the line of the intersection of Cote Brilliante Avenue with the west side of Union, a street fifty-five feet wide, and with double street-car tracks in the middle and roadways on either side of the tracks? Was Cote Brilliante an intersecting highway in the statutory sense? We think not. The object of the law is to prevent collisions between motor vehicles and other vehicles and persons at the intersection of streets and highways, where collisions are apt to happen—at a point where one street opens into another and vehicles usually run past the mouth of the intersecting street. Where two separate roadways run along a street and a cross-street debouches into the roadway an automobile is not running on, the statute does not apply. It is to be borne in mind the statute does not refer to a crossing of a street or highway; that is, the point where pedestrians cross.

We next ask: Was there a city ordinance which required the chauffeur to diminish speed when approaching the crossing? The only ordinance which can be argued to have that effect, after prescribing maximum speeds for vehicles, lays this duty on drivers:

"And when turning the corner of intersecting streets, avenues, boulevards or public places, or when traversing a curve or turn in a street, avenue, boulevard or public place where the view is obstructed, the

rate of speed shall not be greater than six miles per hour.''

The driver of the car in question testified he was not exceeding six miles an hour. Other testimony goes to prove he was. But the act of negligence the instruction for plaintiff submitted to the jury, was not that the car was running more than six miles an hour ''when turning the corner of intersecting streets'' etc., or when the view was obstructed; but that the defendant's driver approached the intersection of Cote Brilliante and Union Avenues ''without slowing down.'' That was a precaution the ordinance did not prescribe. It follows the instruction was erroneous in authorizing a recovery for the omission of the driver to do something not exacted of him by the law.

Should the judgment be reversed for this error when another failure of duty, namely, not signalling, was established? We think it must; for the reason that it cannot be known which neglect was found by the jury to have been the proximate cause of the acci-
Reversal.   dent—omitting to signal, or omitting to slow down. If they thought the latter neglect was the sole proximate cause of the accident, then it was not the breach of a duty to the boy by defendant's driver, and the verdict should have been for defendant.

It is earnestly insisted the plaintiff was shown conclusively to have caused his injury by his own carelessness in darting suddenly off the sidewalk of Union Avenue in close proximity to the car; that he knew moving motor cars were frequent at the
Contributory   point, must have realized the need to look
Negligence.   for them, and could have seen the five headlights of the defendant's car had he looked southward before leaving the sidewalk. He said he looked and did not see the car; an improbable occurrence; we may say an impossible one, if he looked carefully, and with his mind alert to ascertain whether he could cross in safety. Therefore, the question is, should the plaintiff be held negligent in law for leaving the sidewalk when he

did? If the car was only three feet away at the moment, and he was struck within a foot of the east curb, as the driver said, then he was negligent. If he was struck as he said, and as other evidence tends to show, seventeen feet from the east curb, and only three feet from the east rail of the car track, the conclusion of contributory negligence on his part is not compelled; for this would make an issue for the jury as to whether the car was far enough away from him when he started to cross the street, to lead a reasonably prudent boy of fourteen years to attempt to cross in the belief that he could get over before the car reached him. The issue of his negligence as a cause, or factor in causing, the accident was left to the jury under a sound instruction, and rightly, we think.

The judgment is reversed and the cause remanded. All concur, except *Woodson, J.*, absent.