No. 27,893.

WALTER HAMILTON, *Appellee*, v. R. Y. HARRISON, *Appellant*.

(268 Pac. 119.)

Opinion filed June 9, 1928.

*Oscar Foust, John W. Brown* and *Kenneth H. Foust,* all of Iola, for the appellant.

*F. J. Oyler,* of Ottawa, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages arising from a collision of automobiles on a public highway.

The accident occurred on a paved road leading into Iola from the east. About a mile east of that city and some 300 yards to the south is located St. John's hospital, and leading from that institution is a 30-foot roadway known as the Hospital road which connects with the paved road.

On Sunday afternoon, November 16, 1924, plaintiff was walking northward from the hospital towards the paved road when he was overtaken by two women riding in a Ford coupé. They invited him to ride. He stepped on the running board on the right hand side of the car and held on by putting his arm around an upright support. The coupé proceeded northward to the paved road, where the woman driving it turned the coupé towards the west, but before that turn was completed defendant came from the east at high speed, passing on the south side of another car approaching the junction, and then seeing the Ford coupé right in front of him he veered to the north side of the paved road in an unsuccessful effort to avoid hitting it. His car struck the right hand side of the Ford coupé and knocked plaintiff off the running board. Plaintiff fell to the pavement and was badly injured.

This action for damages followed. A verdict and judgment were rendered for plaintiff. Defendant assigns and argues a number of errors, one of which relates to an amendment to plaintiff's petition which was permitted after his evidence had been introduced. The petition had asked for damages in the sum of $18,595, which included items amounting to $1,120 for hospital bills, medicine and medical supplies and doctors' fees. The belated amendment restated the latter items to correspond to the evidence, and in aggregate were $2,527.87. The allowance of this amendment was within the sound discretion of the trial court, and the record shows nothing to indicate its abuse. It is argued that defendant did not have a chance to verify the items; but ere the motion for a new trial was

argued he did have that chance, and it is not now intimated that those items were inaccurate or excessive.

It is next contended that there were no obstructions to plaintiff's view and that he could have seen defendant's car coming from the east in time to have warned the driver of the coupé on which he was riding and in time to have stepped off the running board to safety before the coupé got out on the paved road in front of defendant's fast-driven automobile. Plaintiff said he did look to the east and did not see defendant's car, that he had an impression that he did see another car coming ahead of defendant's, and that it was slowing down as it came from the east approaching the junction with the hospital road. Mayhap this other car cut off plaintiff's view of defendant's car. At all events, no error of law inhering in the judgment is traceable to the matter of obstructions to plaintiff's view as he rode on the running board of the Ford coupé towards the junction of the two roads.

Defendant also contends that plaintiff's negligence was established because he was riding on the running board of the Ford coupé, and that the trial court should have treated that fact as negligence as a matter of law. What is there particularly negligent or dangerous about riding on the running board of an automobile? Abstractly nothing at all. In this case it transpired that plaintiff was knocked off that running board, but that was because of the culpable negligence of defendant. Plaintiff could not be said to have been guilty of contributory negligence as a matter of law because he did not anticipate the likelihood of being knocked off that running board by some reckless driver, nor because he did not anticipate that he was more likely to be injured by riding in that position than if he had ridden elsewhere in the automobile. Judged by the usual result of automobile collisions, it is the man who sits behind the steering wheel who is most likely to be injured, and to be most seriously injured; his is the post of greatest danger; but inherently the danger does not lurk in whatever place in an automobile a person rides. The danger is in the disregard of the rules of the road by drivers of automobiles which reach the same place at the same time when one or more of them is in a fearful hurry. Whether or not it was negligence for plaintiff to ride on the running board under the circumstances was properly left to the jury under an appropriate instruction.

Error is also assigned on the trial court's adverse ruling on defendant's demurrer to the evidence, but that point is hardly worth

discussing. The furious speed at which defendant came from the east, his disregard of the rights of others on the highway, the unhappy consequences of his criminal negligence were altogether too clearly shown to permit this case to be disposed of on a demurrer to the evidence.

Error is predicated on the refusal of the trial court to give certain instructions requested by defendant. If those given fully covered the issues—and we will consider that point—the refusal of those requested was not a serious matter. One of those requested was highly improper, and might well have caused the court to speculate on whether defendant really knew what this lawsuit was about. It read:

"8. You are further instructed that the defendant, R. Y. Harrison, had a legal and lawful right to operate his car at a rate of speed of not to exceed forty (40) miles per hour at the place where the injury in this case is alleged to have occurred."

How much different reads the pertinent provision of the statute:

"That no person shall operate a motor vehicle . . . at a rate of speed . . . greater than is reasonable and proper, having regard for the traffic and use of the road and the conditions of the road, nor at a rate of speed such as to endanger the life or limb of any person. . . ." (R. S. 8-122.)

That was the law governing the operation of defendant's automobile at and near the junction of those two roads that Sunday afternoon. There is, indeed, a provision in the same statute forbidding the operation of an automobile at a speed in excess of 40 miles an hour on a public highway under any circumstances, but that provision had nothing to do with this lawsuit.

Most of the requested instructions were unimportant. The tenth of these hinted at a pertinent rule of law relating to the duty of plaintiff on approaching the paved road to keep a lookout for other cars which were likely to be met at that point; but it was not error to refuse that instruction because of inaccurate statements of law contained in it. However, a careful perusal of the instructions given does not reveal any fair statement of plaintiff's duty to use care for his own safety. The instructions given contain two brief abstract references to the necessity that plaintiff himself be free of contributory negligence as a prerequisite to his recovery of damages against defendant, but there should have been a concrete statement that it was plaintiff's duty as he rode towards the junction to look out for approaching cars on the paved road, and to caution the driver of

that fact, and that his failure to do so would be contributory negligence which would bar a recovery. (*Ferguson v. Lang,* post, p. 273.) Requested instruction No. 11 would have told the jury that if plaintiff by the exercise of ordinary care could have stepped off the running board as the car came to the paved road and thus avoided the injury he could not recover. This instruction contained a sound principle of law, but it was quite defective because it assumed that defendant had some right of precedence on the highway, and because it omitted other facts necessary to a correct statement of law.

A more serious error than any yet considered is based upon the trial court's ruling that the junction or connection of the hospital road with the paved road constituted an intersection of highways as contemplated by the statute. Throughout the trial this view was stated by the trial court and repeated in the court's instructions to the jury. In the ninth instruction the court quoted the statute governing the speed of automobiles on approaching an intersection of highways and which requires that the speed be reduced "to a rate not exceeding eight miles an hour," and that such speed shall not be exceeded until the intersection has been passed.

And the tenth instruction begins thus: "It appears that the mishap complained of occurred upon the intersection of a public highway." This instruction was subjected to timely exception, and this court feels constrained to admit that it was erroneous. The connection of a side road with a main road does not constitute an intersection of highways. There is a quibble here that the hospital road was not a public road at all, but that is no more than a quibble. There was testimony that the hospital road had been laid out and used as a public road for over twenty years. But to constitute an intersection of public roads the roads must cross each other, and the area where they do cross each other and which is common to both roads is the intersection. (*Godfrey v. City of New York,* 93 N. Y. Supp. 899, 903, 104 App. Div. 357; *Atwood v. Connecticut Co.,* 82 Conn. 539; 33 C. J. 475.) In *Sullivan v. Chauvenet,* 282 Mo. 649, it was held that where one street leads into another but does not cross it, the connection of the two streets does not constitute an intersection of highways.

Recurring to the ninth and tenth instructions as quoted above, it will be seen that in so far as they characterize the connection of the hospital road with the paved road as an intersection and that it was unlawful under any circumstances for defendant to drive past that

connection at a speed greater than eight miles an hour, the instructions were neither pertinent nor correct.

Error is predicated on the admission in evidence of a map which purported to outline ·the place of accident, the east and west highway, the hospital road and surroundings, to set out by lines the routes traveled by the colliding automobiles, and the routes and distances traveled by each after the collision to the points at which they stopped. This evidence was not only competent but is of a kind which this court very much wishes to encourage; and when such maps are not technically admissible as evidence—as where the draftsman does not vouch for their accuracy under oath—we would encourage within reasonable limits their use as illustrative of the arguments of counsel, at least in presenting a cause on appeal. The danger of our being misled by the inaccuracy of such maps is negligible compared with the needless waste of time required to read endless pages of testimony to learn what a freehand sketch could reveal at a glance. (See *Skinner v. Wolf*, ante, pp. 158, 160, 266 Pac. 926.)

Another error complained of, and one which to some of the justices of this court is the most serious presented in this appeal, relates to a chiding given to counsel for defendant by the trial court in the presence of the jury. The incident is thus set down in the record:

"During the reading of instructions to the jury, and· at a point after the court has read a portion of instruction No. 9, an objection is made by counsel for the defendant, as follows:

By Counsel for Appellant: "At this time the defendant, R. Y. Harrison, objects to instruction No. 9, for the reason that the law as set out therein was not the law as set out in the statute books at the time of this accident.

By the Court: "Which objection the defendant makes is erroneous, in this, that this law just read to you existed since 1917, and the amendment referred to in 1925 is an amendment that is nowhere quoted herein, and relates only to villages and cities of the second class regulating the rate of speed at 12 miles an hour, and the objection made by the defendant is not in good faith, and the defendant knows of his own knowledge—that is, his attorney does—that such objection is not in good faith, and such amendment as referred to herein has no relation to this case. I am surprised at you making that objection. . . .

By Counsel for Appellant: "Now, I desire to take exception to the remarks of the court and want them to be entered also in the record.

By the Court: "Very well; take all the exceptions you want, but I want the objection, when an objection is made, to apply to some matter related with the case; and the attorney knows that the amendment to which he ·made his

objection has no relation to this lawsuit, and that the statute read by the court has been in existence since 1917, and it is the law of this case, gentlemen of the jury, and you are governed by it."

The court's pointed accusation that counsel for defendant was not acting in good faith and its expression of surprise at counsel could hardly fail to have a very prejudicial effect upon defendant's case before the jury. If the accusation was meritorious—on which point we make no intimation—it would be worthy of rebuke, of course, but that should have been administered in the absence of the jury.

In *Walker v. Coleman*, 55 Kan. 381, 40 Pac. 640, the error complained of was more serious than the one at bar, but the analogy is pertinent. This court cited and quoted from a decision of the supreme court of Michigan touching the correct attitude of a trial court towards counsel in the presence of the jury, thus:

" 'Judges must take great care to say nothing in the hearing of the jurors, while a case is progressing, which can possibly be construed to the prejudice of either party,' and the judgment was reversed because of an unfavorable suggestion of the trial judge, the reviewing court saying, 'It is impossible to tell to what extent the defendant's rights may have been prejudiced by the remarks.' " (p. 584.)

(See, also, *Cone v. Citizens Bank*, 4 Kan. App. 470, 46 Pac. 414; annotation in 42 L. R. A., n. s., 428-436; 29 Cyc. 771.)

Error is also assigned on the trial court's refusal to submit special questions asked by defendant. This point cannot be sustained. An opportunity had been given to submit such questions, which was not timely accepted. It was only a belated afterthought that prompted such request, and it was made by interrupting plaintiff's counsel in his argument to the jury and after the court had finished reading his instructions to the jury.

A final error is urged in overruling defendant's motion for a new trial, supported by affidavits of a man and his wife who had been riding in the automobile which defendant passed when speeding towards the point of collision. Their affidavits contained recitals of fact which were largely cumulative; mayhap the court put no credence in what they said, and did not believe their testimony, if given at a new trial, would change the result. Under such circumstances the denial of a new trial was not error.

For the errors discussed above—defining the junction of the hospital road and paved road as an intersection where defendant had to reduce his speed to eight miles an hour, and the instruction that his failure to do so was negligence which would subject him to lia-

bility; the failure to instruct the jury concerning plaintiff's duty to exercise due care on his own part as he rode towards the junction; and the accusation in the presence of the jury of counsel of the want of good faith on the part of defendant's counsel and the court's expression of surprise thereat—the judgment is reversed and the cause remanded for a new trial.