No. 30,007.

ADRIAN C. HUMPHREYS and W. JULE DAY, Partners as HUMPHREYS & DAY, *Appellees*, v. THE COMMERCE TRUST COMPANY, *Appellant.*

(1 P. [2d] 263.)

Opinion filed July 3, 1931.

*J. M. Challiss,* of Atchison, for the appellant; *W. P. Waggener, O. P. May* and *B. P. Waggener,* all of Atchison, and *John S. Dean,* of Topeka, of counsel.

*Z. E. Jackson,* of Atchison, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover an attorney fee. The verdict and judgment were for plaintiffs, and defendant appeals.

This is a second appeal. The nature of the controversy is sufficiently disclosed in the opinion disposing of the former appeal. (*Humphreys v. Commerce Trust Co.,* 128 Kan. 600, 278 Pac. 736.)

Plaintiffs sued for reasonable compensation, amounting to 20 per cent of the sum which the government relinquished, or $1,649.11. The answer of the guardian contained the following paragraphs, which for convenience are numbered:

"1. This defendant, in the interest of its said minor wards, retained the plaintiffs to protect the interests of said minor wards as against the exactions of the federal taxing authorities.

"2. Defendant further states that the ratable portion or share of such additional taxes so assessed by the government and payable by this defendant as guardian as aforesaid, was the sum of $1,924.87, if said taxes had been lawfully and legally assessed.

"3. Defendant further states that never at any time was it stated, agreed,

contemplated or understood that the plaintiffs herein were doing anything other than protecting the interests of defendant's wards to the extent to which they might be held ratably to discharge the demands and exactions of the government.

"4. Defendant further states that all defendants in said tax suit so instituted by the government were solvent, and had the full amount of the exactions of the government been reduced to judgment, under no circumstances would the wards of this defendant be compelled or required to pay more than a ratable proportion thereof, to wit, one-fifth.

"5. Defendant further admits that the plaintiffs were employed by it upon a contingent basis, and that the plaintiff's compensation was to be determined and fixed at one-fifth, or 20 per cent of what might be saved to the estate represented by this defendant.

"6. Defendant further states that after the employment of the plaintiffs a compromise and adjustment was had of the tax suit so instituted by the United States government, wherein and whereby the demand of the government was reduced from $9,624.35 to $1,378.72, which said last-named sum was ratably paid by all of the heirs of Cyrus Leland, Jr., including this defendant as guardian aforesaid.

"7. Defendant further states that it is not advised as to whether the plaintiffs were instrumental in reducing the demands and exactions of the government, and thereon states that it is informed that such results were achieved by counsel representing other defendants in said tax suit, and by investigation of tax investigators sent out by the internal revenue department. However that may be, this defendant admits, on account of matters and things hereinbefore set forth, that it as guardian as aforesaid is indebted to the plaintiffs upon its contract of employment in the sum of $329.82, and no more.

"8. Wherefore, the defendant prays that the plaintiffs may have judgment on all matters and things set forth in its petition against the defendant in the sum of $329.82, and that defendant recover its costs from henceforth."

It will be observed that employment, service and indebtedness were admitted. Amount of indebtedness was contested.

Paragraph 4 stated a legal conclusion which was incorrect. The wards were indisputably liable for the entire tax assessed by the government, $9,624.25, if the tax were properly assessed, and the entire tax could have been collected from them. This was true although other Leland heirs were also liable, and although as between the wards and other Leland heirs the wards ought to pay only one-fifth of the tax.

Paragraph 5 alleged compensation was to be computed on what might be saved to the wards. The allegation was ambiguous. Defendant meant the amount saved to the wards under the guardian's incorrect interpretation of the law propounded in paragraph 4. As indicated, the amount saved to the wards was the amount abated,

$8,245.53, and the guardian would be indebted to plaintiff for 20 per cent of it, or $1,649.11. Therefore the decisive question in the case was, What was the provision of that portion of the contract of employment which related to amount of compensation?

The first decision was that the question just stated was one of fact, to be tried by jury, and the case was remanded for jury trial. At the succeeding trial testimony was offered pro and con, and the issue was submitted to the jury under the following instruction:

"If you find from the evidence that, as a result of the efforts and services of the plaintiffs, the claim of the government for taxes against the estate of Cyrus Leland, Jr., was reduced $8,245.53, then you will return your verdict in favor of the plaintiffs, and assess the amount of their recovery at 20 per cent of $8,245.53, or the sum of $1,649.11, unless you further find from the evidence that the plaintiffs and defendant agreed that plaintiffs' compensation for such services should be based upon the ratable interest of the said minors in the said Leland estate, or one-fifth of 20 per cent of the total amount of reduction in the tax, in which event your verdict should be for the plaintiffs for $329.82."

The jury found for plaintiffs.

The trust company contends the district court did not follow the law of the case announced in the former decision. The only question of law in the former appeal, aside from a question of practice, was whether the answer raised a question of fact to be tried by a jury. The syllabus reads:

"A ruling denying a demand for a jury trial may be reviewed on appeal without the filing of a motion for a new trial.

"In an action for the recovery of money for legal services, the answer filed by defendant, it is held, raised an issue of fact triable by a jury upon demand of the defendant." (Humphreys v. Commerce Trust Co., 128 Kan. 600, 278 Pac. 736.)

In the opinion it was said:

"This controversy is not between the United States and the defendant, but is an action based on contract with plaintiffs, and must be determined on the basis of the agreement made between them and the defendant. If the agreement was that defendant should pay only for the ratable protection furnished and only for the proportion of the fees chargeable to the wards, that agreement must control. That was the real issue raised by defendant's answer." (p. 602.)

It will be observed that, after stating the issue, the court said it was the only real issue raised by the answer. That is still true, and the issue has been submitted to and decided by a jury.

Defendant discusses the extent to which a guardian may bind the

estate of his wards, and discusses what was said in the former opinion on that subject. It is familiar law that the guardian could not bind his wards by any contract to pay an attorney fee. All the guardian could do if it employed an attorney would be to present a claim against the estate of the wards for allowance of the fee. The question of a guardian's power to bind his wards was discussed in the former opinion merely for the purpose of discovering an issue of fact requiring trial by jury.

Defendant says plaintiffs sued on *quantum meruit*, and there was no evidence of reasonable value of services. The answer alleged that plaintiffs' compensation was to be determined and fixed at one-fifth, or 20 per cent, of what might be saved to the estate represented by the trust company. At the trial it appeared that compensation was to be 20 per cent of something. Mr. Humphreys testified as follows:

"Mr. Ingalls asked what our compensation would be in this case, and I stated that it would be 20 per cent of the amount that was vacated or set aside. He said that was satisfactory."

Mr. Ingalls, president of the trust company, testified as follows:

"I remember calling his attention to the fact that we would only pay 20 per cent of the amount that he saved the interest that I represented. . . . I do not know that I thought of it in one-fifths—it was 20 per cent of what he saved for our wards."

The result is, there was no dispute about the rate to be used in computing compensation. The dispute was with reference to the sum to which the rate was to be applied. The case was sent back for a jury to settle this dispute, and it has been settled.

The trust company contends testimony offered by plaintiffs regarding their expenses in resisting the government's claim was improperly admitted. Mr. Humphreys and Mr. Ingalls conversed about employment and compensation of plaintiffs. The question at the trial was, What did they agree to? They gave different accounts of the conversation. Which account should the jury believe? The testimony relating to expenses which conduct of the employment involved tended to corroborate Mr. Humphreys' version by making it appear the more probable.

There is nothing else of importance in the case. Of course, the trust company was sued in its individual capacity, although in employing attorneys it acted as guardian for the benefit of its wards. The demurrer to plaintiffs' evidence was properly overruled. In-

structions requested by defendant were properly refused. The jury was properly instructed. The court dealt properly with an inquiry by the jury made in the course of the jury's deliberations. The motion for new trial, supported by affidavit presenting impeaching evidence in possession of defendant at the time of the trial and not offered, was properly denied.

The judgment of the district court is affirmed.