## STATE v. GREEN.

No. 5713. Decided May 9, 1936. (57 P. [2d] 750.)

440

*Paul E. Reimann, Clarence F. Williams, Richard S. Johnson,* and *LeGrand A. Carlston,* all of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., and *Zelph S. Calder,* Deputy Atty. Gen., for the State.

FOLLAND, Justice.

Defendant was convicted of the crime of forgery and appeals. Thirty-two alleged errors have been assigned and

are relied on. Many of them can be grouped together in our discussion of them. The facts are not complicated and may be briefly stated. On December 18, 1934, the defendant went to Auerbach's Store in Salt Lake City and purchased a small tea set. The amount of the purchase was $3.01. Payment was by check for $25.50, a copy of which is hereinafter set out. Defendant was given the balance in money. The check was false and forged. The name signed was Dr. W. L. Gardner, and it was stamped by Dr. Gardner's check protector, but the signature was not made or authorized by Dr. Gardner. The defendant had been, shortly prior to that date, a patient of Dr. Gardner and had been employed by him to do some work in his office and home. The defense, under a plea of not guilty, was that of temporary irresponsibility by reason of an overdose of a drug, sodium amytol, taken to relieve a heart ailment. The drug had been prescribed by Dr. Gardner who had given him some tablets to take. Defendant did not testify, but a statement purported to have been made by him to the officer at the time of his arrest was testified to by the officer.

The information contained two counts. The first count charged that defendant "did forge and counterfeit the name of Dr. W. L. Gardner" to a "certain * * * bank check, the tenor whereof is as follows:

"Salt Lake City, Utah,
 Dec. 18, 1934, No.————
 3-14-12
 "The Continental National Bank of Salt Lake City
 "Pay to the
 "Order of John C. Radcliff $25.50
 "Dr. W. L. Gardner $25 and 50 Cts. Dollars
 "Dr. W. L. Gardner."

The second count charged that defendant "did utter, publish and pass as genuine and true * * * a certain false, forged and counterfeited writing on paper purporting to be a bank check, the tenor whereof is as follows:" Then follows a copy of a check of the same tenor and purport as the

one set out in the first count, with the additional allegation, "indorsed on the back thereof John C. Radcliff." Before plea defendant challenged the information by filing a demurrer on the ground, among others, that it "attempts to charge the defendant with more than one public offense contrary to the statute." The point of the objection was that "an information for forgery is demurrable where it sets forth a copy of an alleged forged instrument in each of two counts without alleging that the copies are one and the same instrument." It is conceded, as it must be, that an information in this state may contain one count alleging the felonious execution of a forged instrument, and another count alleging the uttering of the same forged instrument. R. S. Utah 1933, 105-21-7. Such an information is not duplicitous where each of the acts, charged is committed with respect to the same instrument and the crime may be charged in one count or two counts. *State* v. *Jones,* 81 Utah 503, 20 P. (2d) 614; *State* v. *Mitton,* 37 Mont. 366, 96 P. 926, 127 Am. St. Rep. 732; *People* v. *Adler,* 140 N. Y. 331, 35 N. E. 644; *People* v. *Dole,* 122 Cal. 486, 55 P. 581, 68 Am. St. Rep. 50; *Zachary* v. *State,* 97 Ark. 176, 133 S. W. 811; *Bullington* v. *State,* 123 Neb. 432, 243 N. W. 273; 12 R. C. L. 159; 26 C. J. 926. See, also, *State* v. *Jenson,* 74 Utah 527, 280 P. 1046, where there was one count for obtaining property by false pretense, and one for grand larceny.

It is contended that, notwithstanding the tenor of the check as set out in the two counts is the same, there being no allegation that the two purport to be copies of the same instrument, the ground of demurrer that it charges more than one offense is well taken; that "though the copies are alike verbatim et literatim, it is not to be presumed that each is a copy of only one and the same original instrument," citing *People* v. *Shotwell,* 27 Cal. 394. In the Shotwell Case, notwithstanding the quoted section, the court said:

"But it would seem upon reading the second count of the indictment that the check which it is alleged that the defendant attempted to pass

and did pass was a different check from the one described in the first count, for it is distinguished as the 'last mentioned' check."

Distinguishing language having been used, it would follow that it appeared from the information that the two counts refer to different checks. There was no such distinguishing language used in the instant case. It is altogether too narrow and strict a construction to say that the two counts, under the circumstances, refer to different checks unless there are words such as "said" or "aforesaid" to make absolutely definite that the check alleged to have been uttered was the same as the one alleged to have been forged. *People* v. *Williams,* 243 N. Y. 162, 153 N. E. 35; *People* v. *Lafunay,* 127 Misc. 862, 217 N. Y. S. 696; *People* v. *Jailles,* 146 Cal. 301, 79 P. 965. In *State* v. *Malim,* 14 Nev. 288, where the indictment in two counts charged embezzlement, the objection of duplicity was made and the case of *People* v. *Shotwell,* supra, relied on. The court held against the contention and said:

"Now, applying that principle to the case in hand, does it not necessarily follow that the identity of the time, place, names of persons and description of property is prima facie evidence, at least, that they are the same? What principle of law exists that would authorize this court to indulge in the presumption that the two counts actually charge two different offenses, when the fact appears affirmatively upon the face of the indictment that the language of each count is identical as to the time, place, persons and property, and no words are used in either count tending in the slightest degree to show that more than one offense is intended to be charged? If we were to hold that the indictment charged two offenses, would it not be substituting a violent presumption for an apparent fact?"

Under such allegations it must be presumed the reference is to the same instrument unless it appears on the face of the instrument that the second count refers to a different one. *State* v. *Ringer,* 84 W. Va. 546, 100 S. E. 413. The district attorney could easily set at rest any question by the use of some word of reference clearly identifying the subject-matter. Despite the absence of words clearly identify-

ing the two as copies of the same check, we think it is clearly manifest from the information that but one offense is charged; that of forgery by making and uttering the same check.

It is of no moment that the second count charges the check was indorsed while the first count is silent as to an indorsement. The defendant is not charged with forging the indorsement, but merely the signature to the check. *McCoy* v. *State,* 161 Ark. 658, 257 S. W. 386; *Walker* v. *State,* 171 Ark. 375, 284 S. W. 36.

After plea and at the commencement of the trial, defendant moved to quash the second count in the information because it did not recite that the defendant had been duly committed to the district court to answer the charge of uttering contained therein. The information recites:

"The defendant, Fred Green, having been heretofore duly committed to this court by M. J. Bronson, a committing magistrate of Salt Lake County, state of Utah to answer to this charge, is accused by Calvin W. Rawlings, district attorney of the Third judicial district, state of Utah, by this information, of the crime of forgery, committed as follows, to-wit:"

Then follows count 1 alleging the forging of Dr. Gardner's name, and count 2 charging the uttering of the check. The crime of forgery may be committed in either of the two ways alleged. Only one crime of forgery is charged, committed by the act of forging Dr. Gardner's name and the act of uttering the check. It is nevertheless one crime whether by forging or by uttering, or by both. *State* v. *Jones,* supra. The information sufficiently alleged the commitment for the crime of forgery.

Complaint is made that the trial court forced the defendant to trial without sufficient notice to defendant's attorney of the precise time of trial. The practice in the district court of Salt Lake county is, and has been, to set three or four criminal cases for one day and try them in order, one after the other. Such had been done here and this case had to await the trial of other defen-

dants first. The case was called for trial on January 22d. Counsel for defendant had been appointed by the court prior to defendant's plea about a month before. He came into court and announced he had not expected to go to trial before the morning of the 23d, and had only been notified a few minutes before 10 o'clock that the case would be called for trial the morning of the 22d. He asked the court to postpone trial of the case until the next morning. The court suggested that a jury be impaneled and the cause then continued for the introduction of evidence. The only reason for postponement given was that counsel had "various things to do." No statement or showing was made that any substantial right of the defendant would be affected by commencing the trial on the 22d, except that his witnesses had not been subpoenaed because counsel "didn't expect to go to trial until tomorrow." After some discussion, the case proceeded to trial on the 22d, but defendant was not required to proceed with his evidence until the 23d. It does not appear that defendant suffered any inconvenience or the invasion of any right by proceeding in this manner. His witnesses were in court the next day, none were absent, and his counsel presented the case without indicating by words or conduct that he had suffered any lack of preparation or that he was unable to procure any witness because of the trial commencing one day sooner than he had expected. We are satisfied the defendant was not denied any substantial right. Matters of conflict between convenience of counsel and the requirements of a court are within the trial court's discretion, and its rulings will not be disturbed by the appellate court unless such discretion is abused or the defendant is denied a substantial right. *State* v. *Fairclough*, 86 Utah 326, 44 P. (2d) 692.

Assignments 6 and 7 cover numerous rulings on objections to the admission of testimony wherein it is alleged the court unduly restricted the scope of the defense and permitted the prosecution to ask improper questions. None of these warrant special attention. It is sufficient to say we have considered them all and there is no prejudicial error.

Assignment No. 9 is based on the incident of a witness for the defendant, a Mrs. Larson, having been in the court-room during the examination of another witness. The court on the previous day made an order excluding all witnesses other than the one testifying. During the testimony of Mrs. Larson she referred to a fact testified to by a previous witness, whereupon the court made inquiry as to her presence in the courtroom while he was testifying, and learned that she had been present, but that she had not been informed of the court's excluding order. After a colloquy between court, counsel, and the witness, the court said:

"I don't see how the court could very well punish her for contempt."

"Mr. Reimann: (Counsel for defendant) No."

"The Court: If I was sure she knew about that order and violated it willfully, why, of course, she would be in contempt of court."

"The witness: This is the first time I have ever been in court, and I don't know anything about it."

"The Court: I don't consider her to blame. Well, you may proceed."

It was urged this was such a reflection on counsel and the witness as to prejudice the defendant by implying the witness might be guilty of contempt notwithstanding the court's remark: "I don't consider her to blame." Counsel cites *City of Newkirk* v. *Dimmers,* 17 Okl. 525, 87 P. 603, and *Hamilton* v. *Harrison,* 126 Kan. 188, 268 P. 119. These cases support the view that "a remark or the demeanor of the trial judge which amounts to an expression of opinion touching the truthfulness of the testimony of a material witness is reversible error," and that when the "trial court accused counsel for defendant of want of good faith," the likelihood of it being prejudicial was so strong as to constitute reversible error. The incident here called in question is not within the doctrine of either of these cases. Counsel was not accused of bad faith, nor did the court imply that the witness' testimony was false or unreliable. The incident did not at all reflect on her truthfulness as a witness. On her own statement of ignorance of the court's order she was

held exonerated of blame. The incident was probably unfortunate, but we do not see how defendant could have been prejudiced thereby.

Assignment No. 10 is that the trial court erred in denying a new trial "in that the court erred in legal proceeding by participation in the interrogation of witnesses and thereby aided counsel for the state without the consent of counsel for defendant" to the prejudice of defendant. Assignment No. 11 is of similar import directed to remarks made by the court in passing on objections. On several occasions the court intercepted with a question or two to the witness. Probably the most flagrant of these is the following which we quote because of another objection to be considered later:

"Q. By Mr. Black (counsel for state) : Mr. Murphy, do you know whether or not Auerbach's Store here in Salt Lake City, on Third South, Broadway, is within Salt Lake County, or not? A. I think it is.

"The Court: You say you know it is?

"Mr. Black: I just asked him if he knows whether or not the store was in Salt Lake County. If he doesn't know it, I will have to call somebody that does.

"The Court: Do you know whether or not the store is in Salt Lake County, Mr. Murphy? A. Yes, I am of the impression it is in Salt Lake County."

In the case of *State* v. *Gleason*, 86 Utah 26, 36, 40 P. (2d) 222, 227, we had occasion to discuss the right of a trial court to participate in the examination of witnesses, and also his conduct in course of trial. We there said:

"The conduct of a trial is to a large extent under the control and within the discretion of the trial judge who should preside with dignity and impartiality. He is more than a mere referee or moderator. *State* v. *Keehn*, 85 Kan. 765, 118 P. 851. He should not express, or otherwise indicate, an opinion as to the credibility of the witness or the guilt of the defendant. Such matters are exclusively for the jury. The practice is well established for the trial judge, within reasonable bounds, to ask questions of any witness who may be on the stand for the purpose of eliciting the truth, or making clear any points that otherwise would remain obscure. 16 C. J. 831; *People* v. *Reid*, 72

Cal. App. 611, 237 P. 824. It is generally held that in the exercise of his right to question a witness, the judge should not indulge in extensive examination or usurp the function of counsel. In a criminal case he should not by form of question or manner or extent of examination indicate to the jury his opinion as to the guilt of the defendant or the weight or sufficiency of the evidence. Note, 84 A. L. R. 1172; 28 R. C. L. 587. His examination should not be extensive because it is a matter of much difficulty for any person to indulge in an extensive examination of the witness without indicating a train of thought or some feeling with respect to the truth or falsity of the testimony being elicited. His attitude should at all times be fair and impartial so that neither by tone of voice, facial expression, nor manner of propounding a question is bias shown which may prejudice the defendant's right to a fair and impartial trial. A trial judge is within his rights in asking question for the purpose of eliciting the truth or to clear up an obscurity. *People* v. *Jenkins*, 118 Cal. App. 115, 116, 4 P. (2d) 799. But in doing so, sincerity and fairness should characterize his every word and action."

The examination and remarks of the trial judge did not transgress the rule laid down in the Gleason Case.

The defendant contends the venue of the alleged crime was not sufficiently proved. The only evidence that Auerbach's store in Salt Lake City was in Salt Lake county was that quoted above from the examination of Mr. Murphy. Counsel insists that the answer, "Yes I am of the impression it is in Salt Lake County," was no more than an opinion, a conclusion, and therefore incompetent. He made no objection to the answer at the time. In the absence of objection or motion to strike, or any specific dispute as to the location, we think the evidence sufficient to make prima facie proof of venue. Counsel for the state, however, should not leave such matters at loose ends, particularly where positive evidence is available.

Error is assigned to the refusal of the trial court to declare a mistrial on defendant's motion under the following circumstances: The witness was a police officer who had testified to a conversation with defendant at the time of his arrest:

"Q. (By Mr. Black) : Was anything said about who wrote the check? A. I asked him if he was the one who cashed the check there,

and he said, 'Yes'. He said, 'I don't know why I do those things.' He said, 'The only time I do it is when I am under the influence of this drug.'

"Q. Was anything said about whether or not the signature was Dr. Gardner's?

"Mr. Reimann: I object to that as leading, and incompetent, irrelevant and immaterial.

"Mr. Black: I submit it.

"The Court: He may state if there was anything else said.

"Q. Was anything else said? A. Yes.

"Q. What was that? A. He made this statement: He said—I asked him, rather, first—I asked him if he had ever served time.

"Mr. Reimann: We object to that, your Honor. At this time we are going to ask for a mistrial. I think that his going into matters of that kind is absolutely improper and prejudicial to the constitutional rights of the defendant."

The court denied the motion to declare a mistrial, whereupon counsel for defendant, without waiving his exception to the refusal of the court to direct a mistrial, moved to strike the language, "I asked him if he had ever served time." This motion was granted and the statement stricken. The court instructed the jury to disregard the statement of the witness "just as if you had never heard it,—as if it had never been said." The objectionable part of the conversation was given after the district attorney had attempted to direct attention of the witness to a relevant matter, but had been thwarted by objection. There was no error in refusing to declare a mistrial. The court promptly struck out the objectionable language and instructed the jury to disregard it. This was sufficient to protect the rights of the defendant. *People* v. *Rozewicz*, 228 Mich. 231, 199 N. W. 632.

Probably the most serious and difficult questions presented by defendant are those having to do with the introduction in evidence of Exhibit B, a check signed "Dr. W. L. Gardner" dated December 24, 1934, and payable to Jacob Walker for $27.50, and the court's instructions with reference thereto. Mr. Murphy superintendent of Auerbach Company, testified that about a week be-

fore Christmas at 10 or 10:30 in the morning he saw the defendant in that store; that a Miss Rhodes, a clerk in the china department, brought the check to him for approval; that he went to the china department and had a conversation with defendant:

"I went up to him, and asked him if he presented this check to the young lady, and if Dr. Gardner was the man whose name was on the bottom of the check, and he said yes, I could call up Dr. Gardner if I wanted to."

That witness thereupon went to the phone, called Dr. Gardner, came back, and could not find the defendant, although he looked all over the store for him, and that defendant never came back to claim the check. On cross-examination he stated that nothing was paid out on the check or given for it. The check, Exhibit B, was admitted in evidence over objection. Later the state introduced evidence that the signature was not the signature of Dr. W. L. Gardner, nor was it authorized by him, and that certain of the words and figures appeared to have been made by his check protector. The objection to the introduction of Exhibit B was on the grounds that it was immaterial, irrelevant, and incompetent, outside the issues, no reference to it in the information, and that check bears date December 24th, a time when defendant was in jail. Counsel also moved the court to declare a mistrial because of the introduction of this evidence. The motion was denied and objection overruled. At the time the objection was made, the state had not proved the check a forgery, but that was not the specific reason urged against its introduction by counsel although the general objection was broad enough to cover that ground. The introduction of the evidence later probably cured that defect; at least defendant cannot now claim prejudice on that account. The grounds now urged against the evidence are: First, that the instrument bears a date after the incarceration of defendant; that it shows on its face it is not a check; that there is no showing of any offense or any intent to commit an offense in connection with this check; that there

was "no pleading to warrant its use nor competent proof of the commission of a recent offense by defendant similar to the one attempted to be charged in the information," and therefore the instrument was incompetent to show any criminal intent in connection with the check. The state offered the exhibit as bearing on the question of intent and the court charged the jury that it was to be considered only on the question of "felonious intent" and "criminal knowledge." The applicable rule is well stated in 12 R. C. L. 167 as follows:

"The legal inference that a person is presumed.to intend the natural consequences of his acts, which is sometimes conclusive, is not necessarily of itself of much force in cases of forgery or of uttering forged paper. For this reason it is generally held that proof of similar acts of forgery or of uttering is admissible as bearing on the question of the intent with which the forgery or uttering of forged paper for which the defendant has been informed against was forged or uttered."

In *Wilson* v. *State*, 184 Ark. 119, 41 S. W. (2d) 764, 765, the court said:

"Evidence of similar forgeries is admissible to show a uniform course of acting from which guilty knowledge and criminal intent may be inferred. In other words, the evidence of other forgeries is admissible, not to prove the commission of the crime for which the party is being tried, but to prove guilty knowledge or intent. * * *

"As a general rule it must appear that the evidence of other offenses relates to offenses that occurred shortly before or after the commission of the offense for which the accused is being tried. *Melton* v. *State*, 165 Ark. 448, 264 S. W. 965; *Beck* v. *State*, 141 Ark. 102, 216 S. W. 497; *Yelvington* v. *State*, 169 Ark. 359, 275 S. W. 701."

In *Cooper* v. *State*, 193 Ind. 144, 139 N. E. 184, 185, the court said:

"All the authorities in Indiana and the great weight of authority throughout the country hold that in a prosecution for uttering forged paper it is competent to show that shortly before or shortly after the event charged the accused uttered similar forged instruments to an extent which makes it improbable that he should have been ignorant of the forgery, as bearing on the intent with which the par-

ticular act was done. *McCartney* v. *State*, 3 Ind. 353, 56 Am. Dec. 510; *Harding* v. *State*, 54 Ind. 359, 365; *Thomas* v. *State*, 103 Ind. 419, 432, 433, 2 N. E. 808, and authorities cited; *State* v. *Allen*, 56 S. C. 495, 35 S. E. 204; *State* v. *Murphy*, 17 N. D. 48, 115 N. W. 84, 17 L. R. A. (N. S.) 609, 16 Ann. Cas. 1133; *Schultz* v. *United States*, 200 F. 234, 118 C. C. A. 420; *Commonwealth* v. *Coe*, 115 Mass. 481, 501; Wharton Crim. Ev. (11th Ed.) §§ 34, 35, 39; Wharton Crim. Law (11th Ed.) p. 1142, § 920."

See, also, 12 C. J. 599; Underhill Crim. Ev. (4th Ed.) 684; *People* v. *Lucas*, 67 Cal. App. 452, 227 P. 709; *State* v. *Murphy*, 17 N. D. 48, 115 N. W. 84, 17 L. R. A. (N. S.) 609, 16 Ann. Cas. 1133; Note, 62 L. R. A. 252. The same rule has been adopted in this state with respect to embezzlement cases, this court having held that proof of other acts similar to the one charged is admissible to show criminal intent. *State* v. *Judd*, 74 Utah 398, 179 P. 953. As indicated by the above quotations, the evidence is admissible as to similar acts occurring shortly before or after the commission of the offense for which accused is being held. The reasons for the rule are clearly set forth in 1 Wigmore on Evidence, §§ 302-315. The evidence is admitted as bearing on either knowledge or intent, or both. The two are different, and the evidence may bear on one but not on the other. If admissible for either purpose, it should not be excluded. The transactions here in question were quite similar. The checks were signed with the same name, and the same check protector used on each. They were presented under somewhat similar circumstances, and at about the same time. If the check, Exhibit B, was presented after the check, Exhibit A, there may be doubt as to its evidentiary value to prove knowledge of falsity of Exhibit A. If B was presented before A, under the circumstances in evidence, there would be an inference of knowledge of falsity of A. This would arise because of the questionable character of the check, and the disappearance of defendant after its presentation and the questioning by Mr. Murphy. The inference of criminal or felonious intent arises from the repetition of instances, since the probability of innocent intent is minimized by each additional

similar act. It is immaterial that the attempt to utter was unsuccessful, it is the fact of uttering or attempting to utter that has evidentiary value. 1 Wigmore on Evidence (2d Ed.) §§ 310, 312. Whether B or A was presented first is not clearly shown. The testimony was that A was cashed on the 18th of December, and B was presented about a week before Christmas. The evidence was admissible so far as affected by time and similarity elements.

With the rule in mind, we now consider the specific objections urged by defendant. The first one is that the instrument bears a date at a time when he was incarcerated. He relies on *People* v. *Campbell,* 160 Mich. 108, 125 N. W. 42, 34 L. R. A. (N. S.) 58, 136 Am. St. Rep. 417, wherein it was held that a forged instrument is presumed to have been forged on the date it bears unless there is convincing evidence to the contrary. The evidence shows defendant was arrested on December 22d, and was held in jail from that date until after December 24th. In view of the positive evidence that this check was presented at Auerbach's store by the defendant about a week before Christmas, it would seem to be of no importance that the check bears date December 24th, the time when he was in jail. The presumption cannot stand in the face of this evidence. There is no testimony to the contrary. It would therefore follow that the check had been made and was in possession of the defendant prior to the date it bears, and that it was presented by him to the clerk in Auerbach's store on or about the 18th or 19th of December.

It is claimed not to be a check because postdated and was not currently payable in the course of business. This objection, however, does not help the defendant. He attempted to pass it when it was not only postdated, but was also forged and false.

It is contended there was no offense committed by the defendant respecting Exhibit B, it not being shown that he wrote it and no evidence that he uttered it. This objection must fail because there is evidence that he uttered it.

"Uttering a forged writing consists in offering to another a forged instrument with a knowledge of the falsity of the writing and with intent to defraud." 12 R. C. L. 140; 66 C. J. 382.

Sufficient appears from which it could be found that the defendant offered the check to the clerk in Auerbach's store with knowledge of its falsity and intent to defraud. Knowledge and intent are matters of mental state which are usually shown by circumstances. That defendant brought the check to Auerbach's store, presented it to the clerk, Miss Rhodes, and that she in turn presented it to Mr. Murphy are fairly shown, particularly in view of the conversation testified to by Mr. Murphy that he asked the defendant if he presented this check to the young lady, and he answered, "Yes." While he told Mr. Murphy he could call up Dr. Gardner, yet defendant immediately disappeared and could not be found although Murphy searched the store for him. He at no time came back to claim the check. This conduct characterizes his intent and knowledge at the time he presented the check to the clerk.

Assignment No. 19 alleges error in the giving of instruction No. 11 as follows:

"Evidence has been introduced in this case of another offense similar to that charged in the information, and you are instructed that such evidence should be considered solely on the question of criminal knowledge and felonious intent, and for no other purpose whatsoever."

The objection now made to the instruction is that it refers to "another offense similar to that charged" and there was no competent evidence of "a similar offense." At the time the instruction was given, the first count of the information charging the making or forging of the check, Exhibit A, had been dismissed, and the information then charged only forgery by uttering. As already indicated, the evidence of presenting Exhibit B to the clerk in the store, under all the circumstances, was evidence of a similar offense. Further objection is made that the words "guilty knowledge" and "criminal intent" are not sufficiently ex-

plained, but that it is left to inference that these phrases have reference to such knowledge and intent with which the check charged upon in the indictment was passed. The instruction as a general proposition correctly states the law. It is not to be considered as a model. Exception was taken to the instruction as a whole, and not to any particular part thereof. No instruction was requested by defendant which would more amply or satisfactorily cover the subject-matter of the one given. Defendant's theory of defense was submitted to the jury by appropriate instructions. The instruction is not vulnerable to the objection made.

Exception was taken to the form of verdict submitted to the jury which recited "guilty of forgery as charged in the information," but which counsel contend should have been "guilty of uttering a forged instrument as charged in the second count in the information," or other equivalent words. There was also submitted to the jury a form of verdict of not guilty. The verdict as rendered was "guilty of forgery as charged in the information." The verdict is accurately worded. We have already held that the charge of forgery may include either the making or the uttering of a false instrument, or both. The information charged one offense of forgery and not two offenses. The purpose of an indictment is to indentify the charge against the defendant so that his conviction or acquittal may prevent a subsequent charge for the same offense, and also to notify him of the character and nature of the crime charged in order to prepare his defense. It is to defendant's advantage, and not to his prejudice, that the verdict against him was worded as it was. He may set up the judgment of conviction of forgery against a subsequent charge of forgery by either the making or uttering of the same instrument involved herein.

Counsel for defense have been most diligent in searching the record and presenting for review every possible objectionable act or language of court or counsel for the state. The defendant was ably defended in the trial court and in

this court. It would unduly extend the limits of this opinion to comment further. We have discussed the more important of the assignments of error and have carefully read the entire record and find no reversible error therein.

We are convinced the evidence is sufficient to support the verdict. The judgment of conviction is affirmed.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.