No. 34,140

G. W. ARMER, *Appellee*, v. LEON NAGELS, *Appellant*.

(87 P. 2d 574)

Opinion filed March 4, 1939.

*Hall Smith, Joe H. Eresch, John M. Eresch* and *Frank P. Eresch,* all of Topeka, for the appellant.

*A. Harry Crane* and *Ward D. Martin,* both of Topeka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages for the destruction of a crop of barley in which plaintiff claimed an interest. Judgment was for the plaintiff. Defendant appeals.

The action grew out of a transaction alleged to have occurred between plaintiff and defendant with reference to a lease of a quarter section of farm land.

The petition alleged that plaintiff and defendant entered into a written lease for the farm in question on August 15, 1933, whereby plaintiff agreed to deliver defendant two-fifths of the small grain raised on the place at the granary, and plaintiff was to keep three-fifths of the grain thus raised for the tenant's share, and that in case of a sale and the lessor desiring possession of the farm defendant

agreed to pay plaintiff the fair and reasonable value of the growing crops. The petition then alleged that by operation of law and agreement of the parties this lease became the contract between them for the years commencing March 1, 1935, 1936 and 1937; that plaintiff planted barley in 1935 and 1936, gave defendant two-fifths of the grain, and kept three-fifths for himself; that in the fall of 1936, plaintiff planted eighteen acres of barley. .

The petition further alleged that on or about the first of January, 1937, defendant notified plaintiff that he desired possession of the farm on March 1, 1937; that in a conversation plaintiff requested defendant to compensate him for the wheat and barley plaintiff had planted, and that it was orally agreed between plaintiff and defendant that the wheat and barley should remain the property of the plaintiff and he should return when the crops were mature and harvest them upon the share basis set out in the lease; that it was further agreed that if the barley froze out the defendant or his tenant might plow it up.

The petition then alleged that the barley came through the winter and made a good stand, but that notwithstanding this defendant plowed it up and planted corn on the land; that had this barley not been plowed up it would have matured and produced forty bushels to the acre as to seventeen acres of it; that barley was worth one dollar a bushel and the cost of harvesting it would have been three dollars an acre.

The petition then alleged that plaintiff had been damaged by the loss of three-fifths of this barley, or 408 bushels; that it was worth one dollar a bushel, and the cost of harvesting and delivering two-fifths of it to defendant would have amounted to $51.25; that plaintiff had been damaged in the amount of $356.75. Judgment was prayed for in this amount.

The answer was a general denial, as was the reply.

The jury returned a verdict for $275. After a motion for a new trial was overruled judgment was rendered in that amount. One of the grounds for which a new trial was asked was newly discovered evidence.

At the hearing of the motion for a new trial several affidavits were submitted. Two of these affidavits referred to the testimony of one Russell Ballentine given at the trial. Ballentine had testified that he had planted three acres of barley in the fall of 1936 and it had yielded about ninety-six bushels of grain. These two affidavits

were to the effect that the barley about which Ballentine testified had really been planted in the spring of 1937 rather than the fall of 1936.

Another of the grounds for the new trial was that false answers were given by the jurors, which misled the defendant as to the competency of the jurors. Affidavits were furnished at the time of the hearing of the motion for a new trial to the effect that juror Enlow had answered falsely when he was asked on his *voir dire* examination whether a suit had been filed against him in that court where counsel for defendant were the attorneys. It was stated in the affidavit that the answer of Enlow to this had been "no, sir," and that as a matter of fact there had been an action filed in the justice court of the county against Enlow in which counsel for defendant had been attorney for the plaintiff. With reference to this affidavit, the juror made an affidavit that counsel did not ask him if the firm of counsel had ever been attorney against him in a case and that had counsel asked him such a question he would have answered "yes." He also stated in the affidavit that he tried the case on the merits as he saw them from the evidence.

The motion for a new trial was overruled.

Defendant first argues that the trial court erred in its instructions to the jury as to instruction No. 1. That instruction was as follows:

"You are instructed that if you find from the evidence that the plaintiff planted barley upon part of the land leased from defendant in the fall of 1936, and that after he had been notified by defendant to quit and vacate the premises that the plaintiff and defendant orally agreed that the plaintiff should return and harvest the wheat and barley he had so planted and to pay to defendant his two-fifths share of the rent as provided by the written lease and the alleged oral agreement, then and in that event you are instructed that defendant is estopped from denying the plaintiff's interest in the barley and your verdict should be for the plaintiff, unless you further find and believe from the evidence that in the spring of 1937 the crop of barley or stand of barley was not of sufficient quality as to warrant leaving it stand and that the defendant was justified in having said land plowed and another crop planted thereon."

Defendant argues here that the portion of the above instruction where the jury was told that if they found the oral contract to have been entered into as pleaded the defendant was estopped from denying the plaintiff's interest in the barley was erroneous. The theory of defendant in this connection is that the lease fixed the rights of the parties and under the terms of the lease the growing crops on the land belonged absolutely to the defendant when he ended the

tenancy by giving notice. We cannot agree with this argument. The petition pleaded that after the notice to vacate had been given plaintiff by defendant the parties entered into an oral contract whereby plaintiff agreed to harvest the barley and defendant agreed to permit him to do so. The instruction in question correctly submitted this issue to the jury.

Defendant next argues that instruction No. 2 was erroneous. This instruction was as follows:

"If you find and believe from the evidence that the crop of barley planted by the plaintiff in the fall of 1936 had winterkilled during the following winter to such an extent that it would not be profitable, or good farming practice, taking into consideration the quantity and quality of the land upon which it was sown to leave the same as a barley crop, then and in that event the defendant would be justified in having said land plowed or listed and another crop placed on the same, and your verdict should be for the defendant."

The theory of defendant is that when this instruction is read in connection with the latter part of instruction No. 1 it amounts to an instruction that the only way the jury could find for the defendant was to find that the crop had winterkilled. The instructions must all be read together. When all of instruction No. 1 is read in connection with instruction No. 2 the result is not as contended for by the defendant.

Defendant next argues that instruction No. 3 was erroneous. That instruction was as follows:

"You are further instructed that in the event you find for the plaintiff, the measure of damage is the value of the tenant's share of the crop, to wit: three-fifths thereof, less the amount of the harvesting and threshing, or the combining of the same and the delivering of the same as provided by the terms of said lease, and in arriving at that value you may take into consideration the quality of the land for the crop of barley, the preparation of the ground, the quality of the seed planted, the manner in which the crop had gone through the winter, what the season had been for the maturing of similar crops in that vicinity, what the barley yield had been on that farm and in that vicinity in the past, whether or not any more work was required on said crop, also you may consider whether or not there was an established sale in the community for that type of barley for seed, and if so the price per bushel which the same would bring for seed and assess plaintiff's damages at whatever amount you may deem just and equitable, not exceeding, however, the sum of $356.75, the amount sued for."

Defendant argues that this instruction told the jury the measure of damages to be considered by them was as if the crop had matured and been harvested at the time the damage was incurred. We do not agree with this contention of defendant. The measure of dam-

age is the value of the barley at the time it was plowed up, but the best way to arrive at that value was by a consideration of the elements set out in instruction No. 3. Furthermore, no complaint was made to the trial court as to the amount allowed as damages. It is too late to raise it for the first time here. (See *Blewett v. Errickson,* 134 Kan. 690, 8 P. 2d 357.)

Defendant next argues that he should have been allowed a new trial on account of the newly discovered evidence. This evidence has already been set out in this opinion. The evidence was all cumulative and impeaching. In order to entitle a party to a new trial on the ground of newly discovered evidence it must appear that it was not merely cumulative in character (see *Solomon v. Lampl,* 135 Kan. 469, 11 P. 2d 1028; also, *Hamilton v. Harrison,* 126 Kan. 188, 268 Pac. 119); that it was not merely impeaching evidence (see *Humphreys v. Commerce Trust Co.,* 133 Kan. 498, 1 P. 2d 263), and that the evidence was so strong that a different result would have been probable had the new evidence been before the court and jury (see *McVicar v. McVicar,* 128 Kan. 394, 278 Pac. 36; also, *Hamilton v. Harrison,* supra). On all these questions the trial court had a better opportunity to pass than has this court, especially where, as in this case, all the evidence was not brought here for examination.

Defendant next argues that he should be given a new trial on account of the false answers made by the juror on his *voir dire.* The affidavits with reference to this contention have already been set out in this opinion. There was a dispute in these affidavits as to just what was asked the juror. Counsel said one thing, the juror said another. The trial court was in a better position to decide this matter than this court is. Defendant is entitled to a trial before an impartial jury, but a verdict should not be set aside and a new trial ordered on account of partiality on the part of one of the jurors unless this is clearly made to appear. (See *State v. Ready,* 44 Kan. 697, 26 Pac. 58; also, *State v. Gardner,* 126 Kan. 803, 271 Pac. 280; also, *State v. Zakoura,* 145 Kan. 804, 68 P. 2d 11.) The trial court made its ruling on this question on conflicting evidence, and its conclusion will not be disturbed on appeal.

The judgment of the trial court is affirmed.